UNITED STATES of America, Plaintiff-Appellee,

v.

Fritz ERNE, Defendant-Appellant.

No. 77–2177.

United States Court of Appeals, Ninth Circuit.

April 7, 1978.

Rehearing Denied June 7, 1978.

Charles R. Garry, of Garry, Dreyfus, McTernan, Brotsky, Herndon, & Personen, San Francisco, Cal., for defendant-appellant.

Richard Sideman, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before WALLACE and ANDERSON, Circuit Judges, and GRANT,* District Judge.

* Honorable Robert A. Grant, United States District Judge, Northern District of Indiana, sitting by designation.

WALLACE, Circuit Judge:

Erne appeals from his conviction on four counts of violating 26 U.S.C. § 7215, a provision of the Internal Revenue Code. He contends that the district judge erroneously interpreted the statute and improperly refused to hold an evidentiary hearing on his claim of discriminatory prosecution. We affirm.

## I

In January 1974, Erne became president of California Aero Topo (C.A.T.), a company engaged in making aerial photographs and maps. At that time, C.A.T. was suffering financial difficulty because of the defalcations of prior management and the dilatory payment practices of its clients. As a result, when Erne took office C.A.T.'s withholding tax payments were .approximately $70,000 in arrears. This amount represented delinquent withholding taxes for the third and fourth quarters of 1973.

In April 1974, Revenue Officer Farley was assigned to secure the delinquent funds and keep C.A.T.'s account current. Farley personally contacted Erne on several occasions and requested immediate payment of the back taxes. Nevertheless, during the ensuing weeks, C.A.T. continued to fail to meet its tax obligations.

In late April, Farley accepted C.A.T.'s assignment of accounts receivable in satisfaction of the delinquency for the third quarter of 1973. During the period between January and August of 1974, C.A.T. made additional substantial tax payments. These payments, however, were in some cases not timely and they were insufficient to cover its accruing tax liability and eliminate the arrearages.

On June 26, 1974, Farley delivered to Erne an IRS Form L–54, which formally advised him that unless the delinquent taxes were paid, additional enforcement action would be taken. On August 20, 1974, Farley personally gave Erne an IRS Form 2481. This form is designed to satisfy the notice requirement of 26 U.S.C. § 7512(a) and directs the recipient to comply with the procedures detailed in 26 U.S.C. § 7512(b).

Briefly, these procedures include establishing a bank trust account in favor of the United States and making timely deposits of withholding and other taxes into the account. 26 U.S.C. § 7215, in turn, makes it a crime to fail to comply with any provision of section 7512(b).

During the balance of 1974, C.A.T. continued to incur periodic delinquencies. Eventually, Farley referred the matter to his superiors for prosecution, and Erne was convicted on four counts of violating section 7215.

## II

Erne's primary contention is that the district judge erred in failing to require the government to prove that he acted intentionally in violating the income tax law. Our review of the statutes and relevant decisions leads us to conclude that a conviction pursuant to section 7215 does not require proof of intent.

In support of his contention, Erne relies on *United States v. Polk*, 550 F.2d 566 (9th Cir. 1977). In *Polk* we did state, in affirming a section 7215 conviction, that from the facts in the record, the jury could have inferred' that the defendant "intended not to pay the taxes." *Id.* at 567–68. This observation, however, should not be read flatly to require a showing of intent in section 7215 prosecutions. On the contrary, in *Polk* we expressly delineated the requisite elements of this violation with no mention of intent.

> A conviction under 26 U.S.C. § 7215(a) required a finding by the jury that [the defendant] was an employer required to collect, account for, and pay over income-tax withholding on wages and FICA taxes, that he was notified of his failure to do so, and that after notice he failed to collect the taxes while not entertaining a reasonable doubt whether the law required collection.

*Id.* at 567. However, because what we believe to be the basic thrust of *Polk* is challenged, a resolution of Erne's contention requires additional analysis.

We begin with the text of the statute itself. Section 7215 merely states that "[a]ny person who fails to comply with any provision of section 7512(b) shall . . . be guilty of a misdemeanor . . . ." We are therefore confronted with a criminal statute which, by its terms, requires no particular mental state and appears to impose strict criminal liability. While this type of statute presents a difficult and subtle question of statutory construction, we are not without guidance.

At common law, the axiom was undisputed that criminal liability required proof of both a "guilty mind" and the proscribed physical act.[1] It has long been clear, however, that the advent of the modern statutory crime, which has no antecedent in common law, has, to a limited degree, modified the traditional rule. *See, e. g., United States v. Balint,* 258 U.S. 250, 251–52, 42 S.Ct. 301, 66 L.Ed. 604 (1922); *Shevlin-Carpenter Co. v. Minnesota,* 218 U.S. 57, 70, 30 S.Ct. 663, 54 L.Ed. 930 (1910). Thus, the Supreme Court declared:

> We do not go with Blackstone in saying that a "vicious will" is necessary to constitute a crime, . . . for conduct alone without regard to the intent of the doer is often sufficient. There is wide latitude in the lawmakers to declare an offense and to exclude elements of knowledge and diligence from its definition.

*Lambert v. California,* 355 U.S. 225, 228, 78 S.Ct. 240, 242, 2 L.Ed.2d 228 (1957). In *Lambert,* however, the Court held that a municipal ordinance which made it a crime for a convicted felon to remain within the city for more than five days without registering with the police could not, consistent with due process, be applied to "a person [who] did not know of the duty to register . . . ." *Id.* at 229, 78 S.Ct. at 243.

While the Court's analysis is couched in terms of notice, it teaches that this particular crime could not be established as a strict liability offense. Thus, a legislature's "latitude" in creating statutory offenses which require no proof of intent or other mental state is not unlimited.

There is no simple, precise test to assist us in deciding whether section 7215 can properly be applied without proof of intent. On the contrary, "many factors must go into the crucible" of this determination. *United States v. Ayo-Gonzales,* 536 F.2d 652, 657 (5th Cir. 1976), *cert. denied,* 429 U.S. 1072, 97 S.Ct. 808, 50 L.Ed.2d 789 (1977). In *Morissette v. United States,* 342 U.S. 246, 72 S.Ct. 240, 246, 96 L.Ed. 288 (1952), the Court set forth a number of these considerations, one of which was that the offenses which need not require proof of intent generally are not "positive aggressions or invasions, . . . but are in the nature of neglect where the law requires care, or inaction where it imposes a duty." *Id.* at 255. Thus, these statutes are generally designed to protect the "public welfare" in the broad sense rather than individual personal and property rights. Another factor identified was that the accused "usually is in a position to prevent [the violation] with no more care than society might reasonably expect and no more exertion than it might reasonably exact from one who assumed his responsibilities." *Id.* at 256. Perhaps equally important, "penalties commonly are relatively small, and conviction does no grave damage to an offender's reputation." *Id.* Additionally, the Court has reaffirmed the rule implicit in *Lambert v. California, supra,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228, that statutory offenses which do not require proof of intent may violate due process unless because of the nature of the offense, "the probability of regulation is so great that anyone

---

1. *See* W. LaFave & A. Scott, Handbook on Criminal Law 192 (1972). Blackstone, for example, instructed "that to constitute a crime against human laws, there must be, first, a vicious will; and secondly, an unlawful act consequent upon such vicious will." 4 W. Blackstone, Commentaries *21. Similarly, Holmes argued that since the early forms of

legal procedure were created as a peaceful substitute for personal vengeance, the law responded primarily to the *intentionally* inflicted harm. As Holmes tersely observed, "even a dog distinguishes between being stumbled over and being kicked." O. Holmes, The Common Law 3 (1881).

[who engages in the proscribed act] must be presumed to be aware of the regulation." *United States v. International Min. & Chem. Corp.*, 402 U.S. 558, 565, 91 S.Ct. 1697, 1701, 29 L.Ed.2d 178 (1971); *see also United States v. Freed*, 401 U.S. 601, 608–609, 91 S.Ct. 1112, 28 L.Ed.2d 356 (1971); *Lennon v. INS*, 527 F.2d 187, 193 (2d Cir. 1975). Finally, a central factor to be scrutinized is whether Congress intended that a particular statutory offense should require proof of intent. *Morissette v. United States, supra*, 342 U.S. at 258, 72 S.Ct. 240; *United States v. Balint, supra*, 258 U.S. at 252, 42 S.Ct. 301; *cf. United States v. International Min. & Chem. Corp., supra*, 402 U.S. at 562–63, 91 S.Ct. 1697; *United States v. Freed, supra*, 401 U.S. at 613–14, 91 S.Ct. 1112 (Brennan, J., concurring in judgment).

Turning to the specific crime involved here, we believe that the factors discussed above militate against requiring proof of intent. For example, this offense is not a positive aggression against the personal or property rights of another individual. Rather, the function of the statute seems to be one of enhancing broad public welfare by promoting the expeditious collection of revenue. In addition, the statute provides for a maximum penalty of one year imprisonment and $5,000 fine which is not vastly greater than penalties normally associated with other regulatory or public welfare offenses.[2]

Finally, it is unmistakably clear that Congress intended that section 7215 not require proof of intent. Prior to the enactment of section 7215, Congress relied exclusively upon 26 U.S.C. § 7202 for the criminal enforcement of employer's withholding tax duties. Section 7202, however, is a felony statute and explicitly requires proof of willfulness. Congress responded specifically to "the difficulty of proving willfulness" by enacting section 7215. [1958] U.S.Code Cong. & Admin.News, pp. 2187, 2189. We believe that this statutory offense is within the limitations discussed above, and, in keeping with Congress' expressed intent, we therefore hold that section 7215 does not require proof of intent. *See United States v. Hemphill*, 544 F.2d 341, 343–44 (8th Cir. 1976), *cert. denied*, 430 U.S. 967, 97 S.Ct. 1648, 52 L.Ed.2d 358 (1977) (delineation of the elements with no mention of mental state); *United States v. Dreske*, 536 F.2d 188, 196 (8th Cir. 1976) ("state of mind does not provide a defense to the § 7215 charge"); *United States v. Gorden*, 495 F.2d 308, 310 (7th Cir.), *cert. denied*, 419 U.S. 833, 95 S.Ct. 58, 42 L.Ed.2d 59 (1974) ("It has been held that defendant's state of mind does not provide a defense to the Section 7215 misdemeanor charge").

We are not unconcerned with the important policy and jurisprudential principles associated with the traditional rule that criminal liability requires some showing of criminal intent. But our concern is ameliorated in this case by the fact that this crime cannot be committed unknowingly. As indicated above, the offense involves two interrelated statutes. Section 7512(a) provides that when any person fails properly to collect, account for, and pay over certain taxes, *e. g.*, employee withholding taxes, he shall be given hand-delivered notice that he has failed to comply with the law. Section 7512(b) requires a person receiving this notice to establish a separate bank trust account in favor of the *government* and to keep the funds he is required to collect in the account until paid over to the government. Section 7215 criminalizes—with certain exceptions—the failure to comply with any provision of section 7512(b). Thus, the statutory scheme makes it clear that one cannot be criminally liable unless he has first been personally advised that he is in violation of the tax code, and thereafter continues to fail to handle the funds as required by law. Of course, one's failure to comply with section 7512(b)'s provisions may be due to circumstances beyond his control, such as theft or destruction, or he

---

**2.** *See, e. g.*, 18 U.S.C. § 834(f) (one year and $1,000 fine for violation of I.C.C. regulations concerning transportation of dangerous articles); 21 U.S.C. § 333(b) & (c) (one year and $1,000 for Food, Drug and Cosmetic Act violations; three years and $10,000 for second offense).

may have a reasonable doubt as to whether he is responsible for the collection of a particular tax. The exceptions to section 7215 expressly provide, however, that the statute is not violated when either of these circumstances exists.[3] 26 U.S.C. § 7215(b). *See also* [1958] U.S.Code Cong. & Admin. News, pp. 2187, 2192. Thus, while intent need not be proven as an element of the offense, the individual is adequately protected by the guarantee of notice and opportunity to correct nonconforming conduct. *United States v. Gorden, supra,* 495 F.2d at 310.

### III

Erne's second contention is that the district judge erred in refusing to order an evidentiary hearing on Erne's motion to dismiss for discriminatory prosecution. As we recently outlined, a defendant's burden in sustaining an allegation of discriminatory prosecution requires that he

first demonstrate that others similarly situated generally have not been prosecuted for conduct similar to that for which he was prosecuted. Secondly, [the defendant] must show that his selection was based on an impermissible ground such as race, religion or his exercise of his first amendment right to free speech.

*United States v. Scott,* 521 F.2d 1188, 1195 (9th Cir. 1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976). *Accord, United States v. Oaks,* 527 F.2d 937, 940 (9th Cir. 1975), *cert. denied,* 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976). *See*

*also, United States v. Steele,* 461 F.2d 1148 (9th Cir. 1972). In addition, we have held that a defendant is usually entitled to an evidentiary hearing on his claim of discriminatory prosecution "when enough facts are alleged to take the question past the frivolous stage." *United States v. Oaks,* 508 F.2d 1403, 1404 (9th Cir. 1974), *aff'd after remand,* 527 F.2d 937 (1975), *cert. denied,* 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976).

■ Applying these principles, we agree with the district judge that Erne had not alleged sufficient *facts* to justify an evidentiary hearing. Significantly, all of Erne's allegations are focused upon Revenue Officer Farley. The record is clear, however, that the ultimate decision to prosecute is several steps removed from the revenue officer. During the period here involved, a revenue officer's recommendation for prosecution under section 7215 was transferred to the Intelligence Division where the case was independently investigated by Special Agents. If the Intelligence Division concluded that prosecution was warranted, the case was referred to the Regional Counsel's office. If, after review, the Regional Counsel determined that the case merited prosecution, it was referred to the United States Attorney. The United States Attorney, in turn, ultimately decided whether or not to initiate criminal proceedings. In light of this procedure, we are persuaded that even if Farley's initial role in referring the matter for prosecution involved an improper discriminatory motive,[4] it would be insufficient to taint the entire administrative

---

**3.** Significantly, however, "a lack of funds existing immediately after the payment of wages (whether or not created by the payment of such wages) shall not be considered to be circumstances beyond the control of a person." 26 U.S.C. § 7215(b).

**4.** In any event, Erne has not adequately alleged that Farley's conduct "was based on an impermissible ground." Erne's allegations that his exercise of first amendment rights motivated Farley's conduct are speculative and tenuous:

2) Both Mr. Bentzman [C.A.T.'s Attorney] and Mr. Erne exercised their constitutional right to complain of Mr. Farley's actions and attitudes to public officials, one of them Farley's superior.

3) In meetings with Internal Revenue officials, Mrs. Erne expressed her opinions about the manner in which taxpayers should be treated, as is her constitutional right.

4) Mr. Farley was irritated by what he construed to be improper injections of "political" opinions on the part of the Ernes, and they affected his action in seeking to have the provisions of 26 U.S.C. § 7215 applied to C.A.T.

While Erne's allegations, if true, suggest that Farley perhaps evidenced a degree of hostility undesirable in public officials, insufficient *facts* were alleged that Farley's conduct was motivated by Erne's exercise of the First Amendment.

process. Surely, internal procedures such as this are designed, in part, to protect the rights of the citizens with whom the agency deals. In this case, we believe they did just that.

AFFIRMED.