**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Maximiliano GOMEZ–LOPEZ,
Defendant–Appellee.**

No. 94–50548.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 14, 1995.

Decided Aug. 4, 1995.

Warrington S. Parker and Edward J. Weiss, Asst. U.S. Attys., Los Angeles, CA, for plaintiff-appellant.

Michael Garcia and Carlton F. Gunn, Deputy Federal Public Defenders, Los Angeles, CA, for defendant-appellee.

Before: LAY *, BRUNETTI, and RYMER, Circuit Judges.

---

* Honorable Donald P. Lay, United States Senior Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

RYMER, Circuit Judge:

Circuit-wide discovery of the criminal history and prior deportations of defendants prosecuted for illegal reentry by a deported alien in violation of 8 U.S.C. § 1326 was ordered by the district court before our decision in *United States v. Armstrong*, 48 F.3d 1508, 1512 (9th Cir.1995) (en banc). The government declined to comply, and Maximiliano Gomez–Lopez's indictment was dismissed. We have jurisdiction, 18 U.S.C. § 3731, and we reverse dismissal of the indictment because the scope of the discovery ordered bears no relationship to the decision to prosecute Gomez–Lopez.

I

Gomez–Lopez was found in the United States after being deported three times and being convicted three times for committing felonies (selling marijuana, possessing heroin, and first degree burglary). Following indictment for illegal reentry by a deported alien in violation of 8 U.S.C. § 1326(a), (b)(1), and (b)(2),[1] Gomez–Lopez sought discovery on his claim of selective prosecution.

His threshold showing included national data on defendants presented by the INS for prosecution under § 1326, along with data showing a predominance of Latino surnames among those prosecuted within the Central District. The national data indicates that in 1988–93 a higher percentage of persons with Latino surnames who were presented for prosecution were prosecuted than persons with non-Latino surnames who were presented. Dr. Richard Berk, a sociologist, opined that the difference could not be explained by random variation, but that he could not determine whether the reason for the differential was race. Accordingly, Gomez–Lopez sought more information for each person presented for prosecution, including prior criminal record, prior deportations, age, gender, presence of other family members in the country, and nationality.

The Government opposed the selective prosecution motion on the ground that Gomez–Lopez had not made a colorable claim of selective prosecution that would entitle him to discovery, and argued further that, in the event discovery was ordered, it should be limited to the Central District of California because the decision to prosecute was made by the United States Attorney's Office (USAO) for that district according to § 1326 guidelines promulgated in that district. The government produced the guidelines themselves, together with evidence that the criteria for prosecution, including changes made to the guidelines in 1991 and 1993, were developed within the USAO for the Central District without consultation with any other USAO or with Department of Justice officials in Washington D.C. There was evidence that guidelines were adopted at the instigation of the district office of the Immigration and Naturalization Service, that input was received from the INS at the district level, and that the USAO gave weight to those views. A local INS agent also testified that national INS officials "might" be consulted on policies and influence district decisions, but there is no evidence that any INS personnel were involved in crafting the guidelines. The decision whether to present a particular individual for prosecution is made locally by the district office of the INS, in consideration of the charging policy of the USAO for the Central District. Similarly, the decision to prosecute any particular individual presented for prosecution is made by the Central District USAO according to its

---

1. Section 1326 provides:
   (a) Subject to subsection (b) of this section, any alien who—
   (1) has been arrested and deported or excluded and deported, and thereafter
   (2) enters, attempts to enter, or is at any time found in the United States, ... shall be fined ... or imprisoned not more than 2 years, or both.
   (b) Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—

   (1) whose deportation was subsequent to a conviction for commission of three or more misdemeanors ... or a felony ... such alien shall be fined ... imprisoned not more than 10 years, or both; or
   (2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined ... imprisoned not more than 20 years, or both....

guidelines. Individual Assistant United States Attorneys (AUSAs) have discretion to prosecute persons who fall outside the guidelines or to decline to prosecute persons who fall within the guidelines. The government also submitted a list of all § 1326 prosecutions in the Central District from January 1, 1991 through March 30, 1994, as well as five declinations to prosecute defendants with Latino surnames.

The district court ordered disclosure of the prior criminal records and the prior deportations of each person about whom a charging decision was made during the period 1988–1993 for the Ninth Circuit. It found "a nexus between the Central District of California and the national body," but "mindful of the arguments of the burden on the Government ... restrict[ed] the discovery to the 9th Circuit."

When the Government refused to comply with the order, the indictments were dismissed. The Government appeals, challenging the district court's order to produce circuit-wide discovery and dismissal of the indictment.

## II

The government first urges us to ignore *Armstrong* since we have stayed the mandate to allow filing of a petition for certiorari; this we will not do, as *Armstrong* is the law of this circuit. The government then contends that no discovery was warranted because Gomez–Lopez failed to make a colorable showing of selective prosecution, even under *Armstrong*. It particularly argues that unlike *Armstrong*, the government here made a detailed evidentiary showing that included its guideline, its charges, and its declined cases, as well as providing cross-examination of the AUSAs responsible for crafting the guideline.

■ Because dismissal of the indictment must be reversed in any event, we leave resolution of the proper use of national statistics to create the colorable basis and of the sufficiency of the government's rebuttal pursuant to *Armstrong* for another day. Even if the nationwide statistics and other evidence could properly have constituted a colorable basis under *Armstrong*, that does not in itself justify an order for nationwide discovery. Rather, the *scope* of discovery must bear a reasonable relationship to the decision to prosecute the particular defendant.

We held in *United States v. Erne*, 576 F.2d 212 (9th Cir.1978), that the proper focus in discriminatory prosecution cases is on the ultimate decision-maker. In *Erne*, we considered whether an evidentiary hearing was required on allegations that an Internal Revenue Service officer who referred Erne for prosecution impermissibly discriminated on the basis of Erne's exercise of his First Amendment rights. Because the revenue officer's recommendation for prosecution went through several internal reviews, and the United States Attorney ultimately decided whether to initiate criminal proceedings, we held that "even if [the revenue officer's] initial role in referring the matter for prosecution involved an improper discriminatory motive, it would be insufficient to taint the entire administrative process." 576 F.2d at 216–17 (footnote omitted).

Likewise in *United States v. Greene*, 698 F.2d 1364 (9th Cir.1983), the defendant pursued a claim of selective prosecution based on a showing that an IRS agent referred Greene for prosecution because of an impermissible motive. Again, we held that even if the agent's role in referring the matter for prosecution involved an improper discriminatory motive, it would be insufficient because "the ultimate decision to prosecute is several steps removed from the revenue officer." *Id.* at 1368 (quoting *Erne*, 576 F.2d at 216). *See also United States v. Marshall*, 56 F.3d 1210, 1211–12 (9th Circuit 1995) (focussing question of discovery in selective prosecution case on the United States Attorney's decision to prosecute).

■ We have also focused the inquiry on the decision-maker in related contexts. For example, in vindictive prosecution cases, there must be "vindictiveness on the part of those who made the charging decision." *United States v. DeTar*, 832 F.2d 1110, 1112 (9th Cir.1987).

■ Thus the question in this case is whether the district court abused its discre-

tion in ordering circuit-wide discovery without any indication that decision-making occurred at the circuit level. *United States v. Chavez–Vernaza*, 844 F.2d 1368, 1374 (9th Cir.1987) (scope of discovery reviewed for abuse of discretion). The court got to circuit-wide discovery by finding that nationwide discovery was justified, but too burdensome. While we have no quarrel with the propriety of considering burden (or with finding that going through some 11,000 files by hand would be burdensome),[2] there is no support in this record for nationwide discovery or for drawing the line at the circuit.

There is no evidence that the decision to prosecute Gomez–Lopez was made by anyone other than the USAO for the Central District. The only evidence of involvement by anyone else suggests at most that the local office of the INS had input on the charging guidelines, that national INS officials "might" influence local policies, and that some local INS agent presented Gomez–Lopez for prosecution.

Nor does anything in the record suggest that any prosecutorial decision-making takes place at the circuit level. There is no executive branch administrative structure that has anything to do with the Ninth Judicial Circuit, and there is no evidence indicating that there is communication or coordination among the USAOs within the circuit that *could* have affected the decision to prosecute Gomez–Lopez. *See McCleskey v. Kemp*, 481 U.S. 279, 295 n. 15, 107 S.Ct. 1756, 1768 n. 15, 95 L.Ed.2d 262 (1987) ("[s]ince decisions whether to prosecute and what to charge necessarily are individualized and involve infinite factual variations, coordination among

district attorney offices across a State would be relatively meaningless").

Accordingly, ordering discovery beyond the decision-maker, to the Ninth Circuit, was arbitrary; and dismissing the indictment for failure to make that discovery was without basis.

REVERSED and REMANDED.

---

2. *See e.g., Munoz–Santana v. U.S. Immigration and Naturalization Service*, 742 F.2d 561, 563 (9th Cir.1984) (noting that the costs of a hand search for the requested information was a "heavy burden" to be weighed against the need for the information); *Nugget Hydroelectric v. Pacific Gas and Electric Co.*, 981 F.2d 429, 439 (9th Cir.1992) (holding that it was not an abuse of discretion to deny discovery of millions of pages of documents "without a specific showing that the burdens of production would be minimal"), *cert. denied*, —— U.S. ——, 113 S.Ct. 2336, 124 L.Ed.2d 247 (1993); *United States v. Grier*, 866 F.2d 908, 919 (7th Cir.1989) (concluding that significant demands discovery placed on government and limited period of time district court

properly refused to compel disclosure); *see also Roviaro v. United States*, 353 U.S. 53, 62, 77 S.Ct. 623, 628–29, 1 L.Ed.2d 639 (1957) (discovery problem "calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense"); *United States v. Williams*, 791 F.2d 1383, 1387 (9th Cir.) (determining district court correctly balanced the competing interests in denying discovery when the information sought was not sufficiently material to the appellants' case to warrant compromising the Government's interests in inmate safety and prison security), *cert. denied*, 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986).