**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Jay Franklin VOUGHT, Defendant–**
**Appellant.**

No. 94–30337.

United States Court of Appeals,
Ninth Circuit.

Submitted Aug. 11, 1995.*

Decided Nov. 16, 1995.

* The panel finds this case appropriate for submission without argument pursuant to Fed.R.App.P. 34(a) and 9th Cir.R. 34–4.

Andrew J. Lambert, Kalamarides & Associates, Anchorage, Alaska, for defendant-appellant.

Stephen Cooper, Assistant United States Attorney, Fairbanks, Alaska, for plaintiff-appellee.

Before: HALL, WIGGINS, and KLEINFELD, Circuit Judges.

WIGGINS, Circuit Judge:

## BACKGROUND

For almost three years, until his arrest in December 1993, Jay Franklin Vought was involved in a cocaine distribution ring in Alaska, conducting the operation with the help of at least seven other individuals.

Although he was arrested and briefly jailed in early 1993 for a parole violation,

Vought continued to direct the cocaine operation through Deanna Maurer. While Vought was still in jail, Maurer attempted to withdraw from the drug operation, following a police raid on her apartment. The district court found that Vought used threats and violence to induce Maurer's continued participation in the operation, however.

Vought was released from jail on September 2, 1993 as part of an agreement in which he was to assist state law enforcement authorities in an investigation of other drug dealers. Despite this cooperation agreement, Vought proceeded to rebuild his own drug business.

In December 1993, Vought's parole officers received information that Vought was dealing drugs and engaging in other conduct that constituted violations of his parole. Law enforcement authorities had received similar information and had begun a separate investigation into Vought's activities. On December 24, the Statewide Drug Enforcement Unit drug team received information from a confidential informant that Vought was to make a cocaine delivery that afternoon. Sergeant Michael Stickler, who knew of the Parole Office's interest in Vought's activities, notified parole officer Donald H. Allen of the anticipated delivery. Allen and parole officer John Michael Tanner, not wanting to interfere with the drug team's investigation, accompanied the law enforcement officers on their surveillance of Vought. Allen and Tanner were in a separate vehicle and they were not present when the police officers contacted Vought near the residence where the drug delivery was supposed to occur. When Allen and Tanner arrived at the scene, Sergeant Stickler informed them that the police had not found any controlled substances in Vought's possession, and that he was sending his men home.

The parole officers then proceeded alone to the Sophie Station hotel, where they had recently seen Vought's vehicle. After identifying Vought and Maurer as the occupants of room 137, the parole officers searched the room, pursuant to a warrantless drug search condition of Vought's parole. Neither Vought nor Maurer was in the room at the time of the search. Allen and Tanner found approximately 3.2 pounds of cocaine, electronic scales, and $13,100 in cash. At that point, the parole officers contacted the police, who came to the hotel and took control of the evidence. Shortly thereafter, the police arrested Vought and Maurer.

Allen and Tanner, through the police, also contacted Kirk Polhemus, a parole officer in Anchorage with whom they had previously discussed Vought's case, their information that Vought was probably violating his parole, and the possible need for a search of Vought's Anchorage residence. At Allen and Tanner's direction, Polhemus searched Vought's apartment and found two kilograms of cocaine and $11,000 in cash.

During the course of the drug operation, Vought was involved in several violent incidents with various of his drug-dealing associates. On one occasion, Vought tried to kill Charles Smith, one of Vought's cocaine suppliers, because Vought believed Smith was overcharging Vought for the cocaine Smith was supplying. On another occasion, Maurer, whom the district court found was attempting to leave the drug operation, refused to travel on a drug buy and tried to run away. In response, Vought chased her, brought her back at gunpoint, and beat her.

A jury convicted Vought in June 1994 of twelve counts of controlled substance offenses, including conspiracy to distribute cocaine, continuing criminal enterprise in controlled substances, possession with intent to distribute cocaine, and distribution of cocaine; and two counts of money laundering. The district court sentenced Vought to life in prison. Vought timely appeals his conviction and sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

## DISCUSSION

### I. CHALLENGES TO CONVICTION

#### A. Waived Issues

Vought has waived two issues. First, after filing his brief in this court, Vought moved to withdraw his argument that the district court erred by denying his motion either to dismiss count I (conspiracy) or to preclude the intro-

duction of certain statements. This panel granted that motion on July 24, 1995.

Second, although Vought stated in his opening brief that the district court erred by failing to suppress Vought's January 15, 1993 statement, he did not provide any argument on the issue. We accordingly deem the issue abandoned and decline to consider it. *See United States v. Alonso*, 48 F.3d 1536, 1544–45 (9th Cir.1995); *Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir.1988).

### B. Suppression Motion

 Vought argues that the fruits of the warrantless searches of the Sophie Station Hotel room and his Anchorage apartment should have been suppressed. He asserts that the searches were impermissible because the parole officers who conducted the searches were acting as "stalking horses" for the police, thus enabling the police to circumvent the warrant requirement. "Whether or not a parole or probation officer is acting as a stalking horse is a question of fact, reviewed for clear error." *United States v. Richardson*, 849 F.2d 439, 441 (9th Cir.), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 141 (1988).

Allen and Tanner had received information, independently of law enforcement authorities, that Vought was engaging in activities that constituted parole violations. Although they accompanied law enforcement officers on an ultimately fruitless surveillance of Vought, the subsequent decision to search the Sophie Station Hotel room was made solely by the parole officers. The police had no prior knowledge of the search and they did not participate in it. In fact, the police were only notified after the parole officers found the 3.2 pounds of cocaine. Similarly, the search of the Anchorage apartment had been discussed in advance by parole officers Tanner and Polhemus. The search was conducted by Polhemus and a DEA agent, pursuant to Polhemus' normal procedure.

The district court's conclusion, that the parole officers were not acting as "stalking horses" because they initiated and conducted both searches independently of the police, is not clearly erroneous. *See Richardson*, 849 F.2d at 441–42. Accordingly, we affirm the denial of Vought's suppression motion.

### C. Jencks Act Challenge

 Vought claims that at trial he sought production, under the Jencks Act, 18 U.S.C. § 3500, of statements made by Maurer. He was provided with partially redacted copies of her statements. He now objects because the district court did not order production of recordings or transcripts of Maurer's statements. However, Vought never made such a request at trial. We accordingly need not reach the merits of this claim because Vought did not properly raise it before the district court. *See United States v. Hanna*, 55 F.3d 1456, 1459 (9th Cir.1995). As we stated in *Hanna*, "[p]roduction of statements covered by the Jencks Act … is not automatic…. 'The burden rests upon the defendant to invoke the statute….'" *Id.* (quoting *United States v. Burke*, 506 F.2d 1165, 1168 (9th Cir.1974), *cert. denied*, 421 U.S. 915, 95 S.Ct. 1576, 43 L.Ed.2d 781 (1975)). Vought's failure to request at trial the materials he now argues should have been produced precludes his argument on appeal.

### D. Motions to Compel Production

 Vought filed numerous discovery requests for items that were not directly discoverable from the federal government because the items were in the State of Alaska's possession. *See United States v. Dominguez–Villa*, 954 F.2d 562, 565–66 (9th Cir. 1992) (district court cannot compel government to turn over documents that are under the control of state officials). The district court suggested that these items might be discoverable in part under Fed.R.Crim.P. 17(c). Vought subsequently issued two subpoenas, requesting numerous state documents and files, pursuant to Rule 17(c). The state objected to the production of various documents. The district court upheld only the objections that were based either on the ground that the requested documents would jeopardize an ongoing investigation or on the ground that Vought had failed to demonstrate the relevance of the requested documents. We review the district court's ruling for an abuse of discretion. *See United States v. Nixon*, 418 U.S. 683, 702, 94 S.Ct. 3090, 3104–05, 41 L.Ed.2d 1039 (1974).

We hold that the district court's refusal to order production was not an abuse of discretion. Vought was required to show, *inter alia*, that the subpoenaed documents were relevant, *see id.* at 700, 94 S.Ct. at 3103–04, and he wholly failed to do so. Vought only provided the requisite explanation of relevancy *after* the court had already ruled on the matter; Vought's prior filings contained, at most, vague and conclusory assertions of relevance. Moreover, production of confidential and ongoing investigation files would have been "unreasonable and oppressive," and the request for those materials was therefore properly denied. *See* Fed.R.Crim.P. 17(c).

## II. CHALLENGES TO SENTENCE

### A. Adjustment for Restraint of Victim

■■■ Section 3A1.3 of the Sentencing Guidelines provides: "If a victim was physically restrained in the course of the offense, increase by 2 levels." Vought does not dispute the district court's factual finding that he physically restrained coconspirators Deanna Maurer and Charles Smith. He argues, however, that the district court erred by applying the two-level enhancement because a coconspirator is not a "victim" within the meaning of section 3A1.3. We review the district court's interpretation and application of the Sentencing Guidelines *de novo*. *United States v. Buenrostro–Torres*, 24 F.3d 1173, 1174 (9th Cir.1994). We review the court's factual findings for clear error. *Id.*

Neither the Guidelines nor case law definitively resolves the question of whether restraint of a coconspirator is conduct that can trigger application of section 3A1.3. The application notes following section 3A1.3 do not define "victim," and no reported case has addressed this precise issue. For the following reasons, we conclude that section 3A1.3 does apply to the restraint of coconspirators,

when the restraint occurs, as it did here, in furtherance of the conspiracy.

We agree with Vought that his coconspirators are not "victims" of the drug and money laundering offenses for which he was convicted. We do not believe, however, that this fact precludes application of section 3A1.3. We read that section as reflecting Congress' intent to punish an offense in the course of which the offender restrains someone more severely than a similar offense in which there is no such restraint. *Cf. United States v. Tholl*, 895 F.2d 1178, 1185 (7th Cir.1990).[1] The wording of the guideline, "in the course of the offense," does not limit it to victims of the offense of conviction. Because the evil against which the enhancement is directed is physical restraint of a person, we interpret the word "victim" as referring to a victim of the restraint rather than a victim of the offense of conviction. The issue of whether the restraint was "in furtherance of the conspiracy," in *United States v. Harris*, 959 F.2d 246, 265 (D.C.Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 362, 121 L.Ed.2d 275 (1992), arose because the individual sentenced was acquitted of having assaulted the victim, so the issue was whether he could be held liable for his coconspirators' confinement of the victim. The vicarious liability issue of *Harris* does not arise in the case at bar because Vought himself restrained his coconspirators.

We agree with the district court that Vought's restraint of Maurer and Smith was in furtherance of the drug conspiracy of which he was convicted.[2] We hold that the district court did not err by applying the two-level enhancement for restraint of a victim.

### B. Estimation of Drug Quantities

■■ The district court found that "roughly seventeen" kilograms of cocaine were attributable to Vought. This amount of cocaine results in a base offense level of 34 under the

---

1. This is not a case in which Congress has expressly precluded application of section 3A1.3. *See* U.S.S.G. § 3A1.3 application note 2 (the section does not apply where (1) physical restraint "is an element of the offense," or (2) physical restraint is specifically incorporated into the offense guideline).

2. The district court specifically found that Vought's restraint of Maurer occurred because

Maurer wished to disassociate herself from drug dealing and Vought wanted to prevent that. Regarding the assault on Charles Smith, the district court specifically credited Maurer's testimony, which was that Vought attempted to kill Smith because he believed Smith was overcharging Vought for the cocaine Smith was supplying. Neither of these factual findings is clearly erroneous.

Guidelines. Vought claims that, as to four of the figures upon which the seventeen-kilogram total was based, the district court's findings were inadequate and not supported by the evidence. We review the district court's factual findings of drug quantity for clear error, *United States v. Vaandering*, 50 F.3d 696, 704 (9th Cir.1995), and we affirm the court's calculation.

First, Vought challenges the court's adoption of paragraph 19 of the Presentence Report ("PSR"). That paragraph summarized the trial testimony of Rodney and Kelly Heuth and credited them with selling a total of three kilograms of cocaine as part of the conspiracy between May and July 1991. This figure is well supported by the evidence and the district court did not err by adopting it. Rodney testified to selling between two and three kilograms and Kelly testified that the amount was three to four kilograms, "but at least three." Rodney also testified that it was Kelly who, along with Vought, kept track of the drugs and money.

Second, Vought objects to the court's adoption of PSR ¶ 24. That paragraph attributed to James Bennett the purchase of 16 ounces of cocaine. The court did not err by accepting that figure. Polly Smith testified that Bennett returned from one drug buy in Anchorage with five ounces, or "whatever $15,000 bought." On a second buying trip, Bennett took another $15,000 and, on his return, was arrested with eleven ounces of cocaine. The 16–ounce figure appears to be a highly conservative estimate, and the district court did not err by adopting it.

Vought's third objection relates to paragraphs 36 and 39 of the PSR. Paragraph 39 calculated the amount of cocaine sold by Steve Mitchell to Maurer between March and June 1993 as 78 ounces. Paragraph 36 calculated the amount of cocaine sold by Mitchell to Vought and Maurer between December 1992 and February 1993 as 38 ounces (reduced to 35 ounces by the district court). Vought argues that the 35 ounces of cocaine in paragraph 36 was counted twice because the same 35 ounces were included in the 78 ounces in paragraph 39. The district court did not err by adding both the 35–ounce and 78–ounce figures into his total. The PSR makes clear that paragraphs 36 and 39 cover drug transactions during two different, non-overlapping time periods.

Fourth, Vought objects to the district court's adoption of PSR ¶ 49, which attributed an 18–ounce purchase of cocaine to Maurer. Vought argues that the court should have accepted Maurer's pretrial statement, which described a 15–ounce transaction, rather than her trial testimony, which included the 18–ounce figure. The district court did not err by accepting the amount to which Maurer testified at trial. That testimony was given under oath, when Maurer was subject to cross-examination. Her pretrial statement, on the other hand, does not bear such indicia of reliability.

## CONCLUSION

For the foregoing reasons, Vought's conviction and sentence are AFFIRMED.