**UNITED STATES of America, Plaintiff,**

v.

**Ronald W. SKEDDLE, et al., Defendants.**

**No. 3:95CR736.**

United States District Court,
N.D. Ohio,
Western Division.

Sept. 19, 1996.

---

Thomas Karol, Robert W. Kern, Assistant United States Attorneys, Toledo, OH, for U.S.

· Brendan V. Sullivan, Jr., Barry S. Simon, Stuart G. Nash, Williams & Connolly, Washington, DC, for Darryl J. Costin.

Robert Gold, Gold & Wachtel, Washington, DC, for Ronald W. Skeddle.

Richard A. Hibey, Gordon A. Coffee, Winston & Strawn, Washington, DC, for Edward B. Bryant.

Gerald A. Messerman, Kevin M. Norchi, Messerman & Messerman, Cleveland, OH, for David Herzer.

John E. Martindale, Martindale & Brzytwa, Niki Z. Schwartz, Gold, Rotatori & Schwartz, Cleveland, OH, for John Corsaro.

Sander Schwartz, Cook, Riley, Smith, Nace, Schwartz, Cleveland, OH, for Floyd Trouten.

J. Michael Murray, Berkman, Gordan, Murray & DeVan, Cleveland, OH, for David Hobe.

John Czarnecki, Cooper, Straub, Walinski & Cramer, Toledo, OH, for Clarence Martin.

John J. Callahan, Secor, Ide & Callahan, Toledo, OH, for John Purser.

**Order**

CARR, District Judge.

Pending in this criminal case are motions by Arkwright Mutual Insurance Co. (Doc. 242) Libbey–Owens–Ford Co. (LOF) and Pilkington Holdings Inc. (Doc. 243), and the Fairfax Group, Ltd. (Fairfax) and Squire, Sanders & Dempsey (SS & D) (Doc. 244) to quash subpoenas served on them by the defendants under Fed.R.Crim.P. 17(c). For the reasons that follow, the motions to quash shall be granted, without prejudice.

Rule 17 authorizes subpoenas for production of evidence at trial. Subpoenas under this rule are not pretrial discovery devices. *See, e.g., United States v. Brooks,* 966 F.2d 1500 (D.C.Cir.1992). For a Rule 17(c) subpoena to be enforceable, the evidence sought to be produced for trial must be relevant, admissible, and specific. *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). The party issuing a subpoena must do more than speculate about the relevancy of the materials being sought. *United States v. Lloyd,* 71 F.3d 1256 (7th Cir.1995). A subpoena for irrelevant evidence should be quashed. *United States v. Baker,* 63 F.3d 1478 (9th Cir.1995). The burden is on the party issuing the subpoena to show the evidentiary nature of the requested materials with appropriate specificity, *United States v. Arditti,* 955 F.2d 331 (5th Cir.1992), including that the materials are relevant, *United States v. Vought,* 69 F.3d 1498, 1501 (9th Cir.1995), and admissible. *United States v. Cherry,* 876 F.Supp. 547, 552 (S.D.N.Y.1995).

The subpoena served on Arkwright (Doc. 242) calls for production of:

1. All documents reflecting or relating to any fidelity bond, insurance policy or other obligation which lists the Libbey–Owens–Ford Co. ("LOF") as a beneficiary.

2. All such documents reflecting or relating to any claim made upon such bond, insurance policy or obligation relating to any alleged conduct by, or involving, Ronald W. Skeddle, Darryl J. Costin, Edward B. Bryant, John R. Purser, or Bruce Wyre.

The subpoena served on Fairfax and SS & D (Doc.244) calls for:

1. David Alexander's notes regarding his meeting with John Purser on or about May 30, 1993, and any other document reflecting or relating to that meeting.

2. The federal grand jury subpoena served on Libbey–Owens–Ford Co. ("LOF") in February 1994.

3. Copies of all documents produced in response to the federal grand jury subpoena served on LOF in February 1994.

4. Copies of all documents provided by Squire, Sanders & Dempsey to any federal or state law enforcement agency to initiate an investigation and/or prosecution of Ronald W. Skeddle, Darryl J. Costin, Edward B. Bryant, John R. Purser, John Purser, Clarence Martin, David Herzer, Joe Corsaro, David Hobe, and Floyd Trouten ("the defendants").

5. Copies of all documents provided by Squire, Sanders & Dempsey to any federal or state law enforcement agency regarding: the outsourcing of LOF's information technology activities, the sale of LOF's gas wells, the automation of LOF's production facilities, or the activities of the defendants.

The subpoena served on the Fairfax Group, Ltd. (Doc. 244) calls for:

1. Copies of all documents provided by the Fairfax Group, Ltd. ("Fairfax"), by Libbey–Owens–Ford Co. ("LOF") or by Squire, Sanders & Dempsey ("SS & D") to any federal, state, or local law enforcement agency in an attempt to persuade such law enforcement agency to initiate an investigation and/or prosecution of Ronald W. Skeddle, Darryl J. Costin, Edward B. Bryant, David L. Herzer, Joseph G. Corsaro, John R. Purser, John Purser, Clarence H. Martin, David M. Hobe or Floyd A. Trouten, III (collectively, the "defendants").

2. Copies of all documents provided by Fairfax, LOF of SS & D to any federal or state law enforcement agency regarding: the outsourcing of LOF's information tech-

nology activities, the sale of LOF's gas wells, the automation of LOF's production facilities, or the activities of the defendants.

3. All documents reflecting or relating to meetings between representatives of Fairfax, LOF, or SS & D and representatives of any federal, state or local law enforcement agency in connection with the investigation and/or prosecution of the defendants, or in connection with the initiation of such investigation and/or prosecution.

4. All materials reflecting or related to any physical or electronic surveillance of the defendants conducted by officers, employees or agents of Fairfax or the Libbey–Owens–Ford Co. ("LOF").

5. All materials reflecting or related to any consensual or non-consensual taping, by officers, employees or agents of Fairfax or LOF, of any conversation involving or related to defendants.

6. All documents reflecting or relating to interviews conducted by employees or agents of LOF's information technology activities, the sale of LOF's gas wells, the automation of LOF's production facilities, or the activities of the defendants.[1]

7. All reports, compilations or other documents authored by employees or agents of Fairfax regarding the outsourcing of LOF's information technology activities, the sale of LOF's gas wells, the automation of LOF's production facilities, or the activities of the defendants.

8. All information obtained from the computer system located in the respective offices of defendants Skeddle, Costin, or Bryant in or after May, 1993.

9. All documents reflecting information obtained from any review or inspection of any mail, envelope, or package (or the contents of any mail, envelope, or package) addressed to defendants Skeddle, Bryant or Costin in or after May, 1993.

10. All documents provided by Fairfax, LOF, or SS & D to Coopers & Lybrand regarding: the outsourcing of LOF's gas

---

1. Pursuant to prior order, interviews conducted by Fairfax and submitted to the grand jury have been filed under seal for in camera review to ascertain whether those materials contain *Brady* information. That review has been undertaken and a ruling shall issue in due course.

wells, the automation of LOF's production facilities, or the conduct of any of the defendants.

The subpoena served on LOF and Pilkington is nineteen pages long and enumerates 84 items. So far as I tell, it demands production of nearly every document possessed by LOF relating directly or indirectly to the activities of the defendants Skeddle, Costin, and Bryant that resulted in the indictment in this case and LOF's subsequent investigation of those activities.

In my view, these subpoenas are no more than devices for obtaining discovery. They meet none of the requirements of a proper Rule 17(c) subpoena. In addition, it appears that many of the documents covered by these subpoenas come within the attorney-client and work-product doctrines.

The premise on which the defendants based these broad subpoenas is that, "[t]o date, the Libbey–Owens–Ford Co. ("LOF") has exercised covert control over this case—directing the course of the litigation by controlling access of all parties, including the government and the grand jury, to documents that are in LOF's exclusive possession." Because "LOF's tactics have been shielded from judicial review[,] [d]efendants ... request that the Court put an end to LOF's unfair dominion over the course of this litigation [by forcing] LOF to divulge those documents in its possession that are critical to defendants' ability to disprove LOF's allegations of wrongdoing...." (Doc. 305 at 1–2).

In light of the defendants' description of their view of LOF's role in the initiation of the prosecution, it is clear that their principal objective (in addition to finding out whatever they can about the government's case without regard to the restrictions of Fed. R.Crim.P. 16 and the Jencks Act, 18 U.S.C. § 3500) is to try to develop a record to challenge the exercise of prosecutorial discretion leading to their indictment.

Prosecutorial charging decisions may not be entirely beyond constitutional constraints, but, as the Supreme Court pointed out in *Wayte v. United States*, 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985),

"the decision to prosecute is particularly ill-suited to judicial review." Moreover:

> Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

*Id.* at 607–08, 105 S.Ct. at 1530–31.

One can readily understand why a defendant would want to delve into these matters. But the law simply does not let him do so, because "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). Such "judicial entanglement in the core decisions of another branch of government" as the Ninth Circuit noted in *United States v. Redondo–Lemos*, 955 F.2d 1296, 1299–1300 (9th Cir.1992), "especially as to those bearing directly and substantially on matters litigated in the federal court—is inconsistent with the division of responsibilities assigned to each branch by the Constitution."

Other courts have routinely refused to permit discovery similar to the sort and for the purposes sought by the defendants. *United States v. Gomez–Lopez*, 62 F.3d 304 (9th Cir.1995); *United States v. Marshall*, 56 F.3d 1210 (9th Cir.1995); *United States v. Goulding*, 26 F.3d 656 (7th Cir.1994) (discovery directed to alleged retaliatory motive for prosecution denied); *United States v. Fares*, 978 F.2d 52, 59 (2d Cir.1992); *United States*

*v. Bourgeois,* 964 F.2d 935, 939 (9th Cir.1992) (to "discourage fishing expeditions, protect legitimate prosecutorial discretion, safeguard government investigative records, and yet still allow meritorious claims to proceed" a defendant must "present specific facts, not mere allegations" of unlawful prosecutorial conduct).

The Supreme Court recently underscored the continuing vitality of these principles in *United States v. Armstrong,* 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), in which the Court reversed a Ninth Circuit decision dismissing an indictment because a prosecutor refused to comply with an order allowing discovery with regard to a claim of race-based prosecution in drug cases. The Court reaffirmed the importance of "[j]udicial deference to the decisions" of executive officers, and the need not to "impair the performance of a core executive function" by unwarranted judicial inquiries into the prosecutor's exercise of the most fundamental duties of his office. *Id.* at 465, 116 S.Ct. at 1486.

The defendant's allegations about alleged misconduct and bad faith on the part of their former employer are, simply, complaints that LOF, believing itself to have been cheated out of several million dollars by some of its highest placed and most trusted officers, has sought vigorously to see that they are punished for their alleged misdeeds. There is nothing improper in LOF doing so. That is what motivates most victims to go to the police. Even if I could see some impropriety in the defendants' depiction of LOF and its role in this case, that lack of virtue on its part is not a defense to the charges in this case.

Any claim for discovery of the sort sought by these subpoenas must, in any event, be based firmly in a colorable claim of selective prosecution. *See Armstrong, supra,* 517 U.S. at 465–67, 116 S.Ct. at 1487. Such claim, in turn, must derive from a claim that equal protection has been violated. *Id.*

The defendants make no such claim. They do not contend that they have been prosecuted on the basis of race or other invidious or improper factor, or that other persons have not been prosecuted in similar circumstances.

There is nothing in the defendants' response to the motions to quash which raises even a faintly colorable or cognizable claim of misconduct on the part of either LOF or the government. The inquiry that they wish to undertake is neither warranted nor permissible.

The subpoenas shall be overruled, without prejudice to reissuance of subpoenas that are substantially more specific, relate to issues in the case, and seek documents that reasonably appear to be relevant and admissible with regard to those issues. I expect that any future subpoenas will be tailored carefully to the requirements of Rule 17(c).

It is, therefore,

ORDERED THAT the motion to quash subpoenas (Docs. 242, 243, 244) be, and the same hereby are granted, without prejudice as specified herein.

So ordered.