86 F.3d 944
 44 Fed. R. Evid. Serv. 1332, 96 Cal. Daily Op.
Serv. 4643,
96 Daily Journal D.A.R. 7475
UNITED STATES of America, Plaintiff-Appellee,
v.
Keith Steven YOUNG, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Edelmiro TAMEZ, Jr., Defendant-Appellant.
 Nos. 95-30203, 95-30215.
 United States Court of Appeals,
Ninth Circuit.
 Submitted* April 10, 1996.
Decided June 25, 1996.
 
 Thomas O. Rice, Assistant United States Attorney, Spokane, Washington, for plaintiff-appellee.
 Richard L. Bechtolt, Spokane, Washington, for defendant-appellant Keith Steven Young.
 Donald A. Kellman, Spokane, Washington, for defendant-appellant Edelmiro Tamez, Jr.
 Appeals from the United States District Court for the Eastern District of Washington; Fred Van Sickle, District Judge, Presiding. D.C. Nos. CR-94-225-FVS, CR-94-249-FVS.
 Before: WRIGHT, PREGERSON, and TASHIMA, Circuit Judges.
 TASHIMA, Circuit Judge:
 
 
 1
 Keith Steven Young and Edelmiro Tamez, Jr. (defendants) appeal their convictions for conspiracy to distribute cocaine in violation of 21 U.S.C. § 846. They contend that the district court erred in denying, without an evidentiary hearing, their motion to compel the government to immunize a witness. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291. We reverse and remand for an evidentiary hearing.[1]
 
 BACKGROUND
 
 2
 A four-count Second Superseding Indictment filed on October 18, 1994, charged John S. Drake, Keith Steven Young, Nelson Eudaldo Mariani and Edelmiro Tamez, Jr., with various narcotics offenses. Count 1 of the Indictment alleged that between September, 1990, and October 4, 1994, Young, Tamez, Drake, and Mariani conspired to distribute over five kilograms of cocaine in violation of 21 U.S.C. § 846.
 
 
 3
 The government presented 13 witnesses in an eight-day jury trial. Pursuant to favorable plea agreements, co-defendants Drake and Mariani testified for the government. Two other government witnesses--James Larsen and Howard Nichols--also testified pursuant to plea agreements. Two government witnesses--Daniel Faunce and Bruce Farline--received immunity for their testimony. Thus, all of the principal witnesses who testified for the government were either granted immunity or some other favorable treatment in exchange for their testimony.
 
 
 4
 Relying heavily on the testimony of Drake and Larsen, the government showed that defendants used Drake as a middleman to distribute kilogram quantities of cocaine to Larsen, Mariani, and Clarence Paulsen. Tamez worked with Drake from 1987 until 1994. Drake also distributed kilogram quantities of cocaine for Young on five or six occasions in 1994.
 
 
 5
 After the government's case-in-chief, Tamez attempted to call David Delfs as a witness. Tamez made an offer of proof that once, while at the home of "Flash" (aka Robert Adams), Delfs heard government witness Drake state that he was "falsely accusing somebody as being [his] supplier in the Tri-Cities."[2] Both Tamez and Young professed to be the falsely accused supplier from the Tri-Cities and requested that the district court give, or order the government to give, Delfs immunity for his testimony.
 
 
 6
 Appearing with his attorney, Delfs indicated that he would decline to testify by invoking his Fifth Amendment privilege against self-incrimination. At the time, Delfs had been indicted in an unrelated case for firearms offenses. The court denied the motion for use immunity for Delfs and further denied the defense request for an evidentiary hearing on this issue.
 
 
 7
 The jury found both Tamez and Young guilty of conspiracy to distribute over five kilograms of cocaine.
 
 STANDARD OF REVIEW
 
 8
 The government contends that we should review the district court's denial of the defense motion for an evidentiary hearing on use immunity for clear error. The case on which the government relies for this proposition, United States v. Baker, 10 F.3d 1374 (9th Cir.1993), cert. denied, --- U.S. ----, 115 S.Ct. 330, 130 L.Ed.2d 289 (1994), establishes only that, after the district court conducts an evidentiary hearing to determine whether the government intentionally distorted the fact-finding process, its findings of fact are reviewed for clear error. Id. at 1415. Here, as stated, the district court never conducted an evidentiary hearing. The issue before us is whether the failure to hold such a hearing constitutes reversible error. Baker does not enunciate the standard of review of this issue.
 
 
 9
 We have not previously articulated the appropriate standard of review of this issue. See, e.g., United States v. Westerdahl, 945 F.2d 1083, 1087 (9th Cir.1991). We conclude that the issue is properly characterized as a mixed question of law and fact, which we review de novo. United States v. Spillone, 879 F.2d 514, 520 (9th Cir.1989) (de novo standard of review proper for most mixed questions of law and fact), cert. denied, 498 U.S. 878, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990). Although we have not explicitly mentioned de novo review in the context of evidentiary hearings on use immunity, this level of scrutiny is consistent with our prior cases on the issue. See, e.g., Baker, 10 F.3d at 1415; Westerdahl, 945 F.2d at 1087; United States v. Lord, 711 F.2d 887, 891 (9th Cir.1983). Further, the situation here is analogous to a district court's denial of a hearing under Franks v. Delaware, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), which we review de novo. United States v. Homick, 964 F.2d 899, 904 (9th Cir.1992); United States v. Perdomo, 800 F.2d 916, 920 (9th Cir.1986).
 
 DISCUSSION
 
 10
 A criminal defendant is not entitled to compel the government to grant immunity to a witness. Westerdahl, 945 F.2d at 1086. In order to fall under an exception to this rule, defendants must show that: (1) the testimony was relevant; and (2) the government distorted the judicial fact-finding process by denying immunity. Id. (citing Lord, 711 F.2d at 892).
 
 I. Relevance
 
 11
 To satisfy the first prong of the Lord test, defendants need only show that the testimony sought was relevant. Westerdahl, 945 F.2d at 1086. Delfs's testimony was undeniably relevant to both Tamez's and Young's defense. As the middleman, only Drake could definitively link the cocaine that he supplied to Larsen, Paulsen and Mariani with his own sources--Young and Tamez. Although Larsen met Tamez once in 1994 to discuss a kilogram of poor quality cocaine that he had obtained from Tamez through Drake, Larsen learned largely through Drake himself that Tamez was the source of Drake's cocaine. Similarly, the only way that Larsen learned that Young was also a supplier of Drake's cocaine was through Drake himself.
 
 
 12
 Delfs would have testified that Drake stated to him that he was falsely accusing somebody as being his supplier in the Tri-Cities. The falsely accused supplier could have been either Tamez or Young. As the district court itself recognized, this impeachment evidence was clearly relevant to the fact-finding process.
 
 
 13
 II. Intentional Distortion of the Fact-Finding Process
 
 
 14
 With regard to the second prong of the Lord test, misconduct is not confined solely to situations where the government affirmatively induces a witness not to testify in favor of a defendant. Westerdahl, 945 F.2d at 1087. In Westerdahl, the government relied heavily on the testimony of two witnesses who had been granted use immunity and one witness who testified as part of a plea bargain in which a host of felony charges pending against him were dropped. Id. We found that the use of this testimony, while denying use immunity to a defense witness who would directly contradict that of the government witness, was the type of distorted fact-finding process that Lord intended to prevent. Id. We reversed Westerdahl's conviction because the district court failed to hold an evidentiary hearing to determine whether prosecutorial misconduct distorted the fact-finding process. Id.
 
 
 15
 Similarly, in the case at bench, the government relied heavily on the testimony of Larsen and Drake, both of whom had entered into favorable plea agreements. In fact, Larsen and Drake were the only witnesses who directly implicated Tamez in the conspiracy.[3] Of the remaining four witnesses who testified against Young, two (Mariani and Nichols) had entered into plea agreements with the government, and two (Faunce and Farline) received immunity. In light of these plea agreements and grants of immunity, there is a serious danger that the government's denial of immunity to Delfs--the only witness who could have impeached Drake as the government's critical witness--distorted the fact-finding process.
 
 
 16
 The only reason that the government proffers for its refusal to grant Delfs immunity is that Delfs was under indictment in a separate case for firearms offenses. Cf. Baker, 10 F.3d at 1414 (noting that the potential defense witnesses were not charged with committing any crimes in the same district). Though the record is meager on this point, the government suggests that Delfs may have been under investigation for various drug offenses as well. Delfs was ultimately never charged with any narcotics offenses. More importantly, the government never linked Delfs's charged firearms offenses or alleged, uncharged narcotics offenses with the instant case against defendants. Nothing in the record explains how use immunity for Delfs in this narcotics case would have adversely impacted the government's case in an unrelated, separate firearms prosecution against Delfs.
 
 
 17
 The government's reliance on Baker is misplaced. In Baker, it was unclear whether the immunized testimony of the potential defense witnesses would have directly contradicted the government's evidence. More importantly, the district court in fact conducted an evidentiary hearing and determined that the defense failed to prove that the government denied immunity with the intent to distort the fact-finding process. Id. at 1415. On appeal, we refused to reverse the district court's finding of fact as clearly erroneous. Id.
 
 
 18
 Here, by contrast, the district court denied Tamez's request for use immunity without an evidentiary hearing, and thus, without any findings of fact as to whether the government intentionally distorted the fact-finding process. Further, Delfs's testimony would have directly contradicted that of Drake, a key government witness.
 
 
 19
 Finally, the error is not harmless. The defense theory of the case was that Drake and Larsen were pointing the finger at Tamez or Young as the fall guy. Drake and Larsen were thus able to obtain favorable deals from the government while protecting their true source of cocaine. Because Drake was the only government witness who could definitively identify defendants as his upper-level suppliers of cocaine, impeachment of Drake's testimony was critical to the defense. Delfs's testimony would not have been cumulative or non-exculpatory. Westerdahl, 945 F.2d at 1086. It would have called into question the cornerstone of the government's case. Its exclusion was not harmless error.
 
 III. Admissibility
 
 20
 The government's final contention is that Delfs's testimony, offered as extrinsic evidence of Drake's prior inconsistent statement, would have been inadmissible in any case for lack of a proper foundation. The government asserts that Fed.R.Evid. 613(b) barred admission of Delfs's testimony because the defense did not first provide Drake an opportunity to explain or deny his prior inconsistent statement.
 
 
 21
 The government's argument is without merit. We have expressly recognized that the foundational prerequisites of Rule 613(b) require only that the witness be permitted--at some point--to explain or deny the prior inconsistent statement. United States v. McLaughlin, 663 F.2d 949, 953 (9th Cir.1981); Fed.R.Evid. 613(b), Advisory Committee Note. On cross-examination, Drake denied ever having gone to Flash's (Adams's) house in November 1994, which is where Delfs alleged that Drake made the inconsistent statement. It may have been preferable for Tamez's counsel to question Drake directly whether he ever stated that he intended falsely to accuse a source in the Tri-Cities. However, even absent Drake's flat denial of the statement on cross-examination, Delfs's testimony concerning Drake's prior inconsistent statement would not have been barred. The government would have been free to re-call Drake as a witness and give him an additional opportunity to explain or deny the statement attributed to him. McLaughlin, 663 F.2d at 953. Thus, the government's objection to Delfs's testimony on the basis of Rule 613(b) is without merit.
 
 CONCLUSION
 
 22
 We reverse the district court's order refusing to conduct an evidentiary hearing on the use immunity issue and remand for the holding of an evidentiary hearing to determine whether the government's withholding of immunity intentionally distorted the fact-finding process, and for such further proceedings as may be necessary in light of the district court's ruling on that issue.
 
 
 23
 REVERSED AND REMANDED.
 
 
 
 *
 The panel unanimously finds these cases suitable for decision without oral argument. Fed.R.App.P. 34(a); Ninth Cir.R. 34-4
 
 
 [1]
 In a separate, unpublished memorandum disposition, we address all of the other contentions raised by defendants, and we affirm the district court in all other respects
 
 
 [2]
 Initially, Tamez's proffer was that Drake and Nichols (another government witness) both stated that they were falsely accusing a source in the Tri-Cities. Tamez's counsel subsequently clarified his offer of proof. Although Nichols and Drake were together on the night that the statement was supposedly made, it was Drake alone--not Nichols--who supposedly stated that he would falsely accuse a supplier
 
 
 [3]
 The government contends that Mariani testified to having received a kilo of cocaine from Drake and Tamez on one occasion. However, Mariani's actual testimony was that he was too drunk and high on drugs to remember from whom he got the drugs