**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Francisco Javier ALVAREZ,**
**a.k.a. Frank Javier Alvarez,**
**Defendant–Appellant.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Richard Valenzuela, Defendant–**
**Appellant.**

Nos. 01–10686, 02–10260.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 5, 2003.

Filed Feb. 25, 2004.

Pamela M. Katzenberg, Tucson, Arizona, S. Jonathan Young, Law Offices of Williamson & Young, P.C., Tucson, AZ, for the defendants-appellants.

Paul K. Charlton, United States Attorney, Robert L. Miskell, Chief, Criminal Division, Christina M. Cabanillas, Deputy Chief, Appellate Section, Richard E. Gordon, Assistant U.S. Attorney, and James T. Lacey, Assistant U.S. Attorney, United States Attorney's Office for the District of Arizona, Tucson, AZ, for the plaintiff-appellee.

Before: KOZINSKI and T.G. NELSON, Circuit Judges, and RESTANI, Judge.*

RESTANI, Judge:

## I. Introduction

Francisco Javier Alvarez appeals his jury conviction and sentence for one count of conspiracy to possess with intent to distribute cocaine in excess of five kilograms in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and § 846 (2000), a Class A felony. Richard Valenzuela appeals his jury conviction of conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii)(II) (2000), also a Class A felony. We have jurisdiction over their timely appeals under 28 U.S.C. §§ 1291 and 1294 (2000). For the reasons that follow, we vacate Alvarez's conviction and remand his case to the district court with instructions to review the probation files of three cooperating witnesses to determine whether they contain information that should have been disclosed to the defense. We affirm Valenzuela's conviction and sentence.

## II. Factual And Procedural Background

These appeals involve a broad conspiracy to import and distribute at least 12 tons of cocaine from Mexico from approximately December 1995 through May 1999. The cocaine was smuggled into the United States through a 200–foot long tunnel linking a mobile home in Naco, Arizona, to a residence in Naco, Sonora, Mexico. The investigation into the conspiracy commenced after 5.6 tons of cocaine were

---

* The Honorable Jane A. Restani, Chief Judge of the United States Court of International Trade, sitting by designation.

seized at a Tucson warehouse in December of 1996.

From May 19, 1999 through October 25, 2000, six indictments were filed charging 50 defendants with drug trafficking violations, use and carry of firearms in connection with drug trafficking offenses, and forfeiture allegations. The government alleged that Appellant Alvarez provided security surveillance of loads of cocaine while in transport. It further alleged that Appellant Valenzuela was paid in excess of $100,000 to store cocaine at his home on various occasions in 1996, and that, on at least one occasion, a co-conspirator possessed an automatic weapon while guarding the drugs at Valenzuela's home.

Alvarez and Valenzuela were tried separately. Alvarez was convicted by a jury of Count 4 of the sixth superseding indictment, which charged that from approximately December 1995 to approximately May 1999, Alvarez conspired to possess with intent to distribute in excess of five kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and § 846. The trial court found, by a preponderance of the evidence, that the weight of drugs attributable to Alvarez was one ton. On October 24, 2001, Alvarez was sentenced to 188 months' imprisonment and 60 months' supervised release. Valenzuela was convicted of conspiracy to possess with intent to distribute 12,000 pounds of cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii)(II). He was sentenced to 120 months' imprisonment to be followed by 60 months' supervised release. Appellants filed timely notices of appeal.

## III. DISCUSSION

### A. ALVAREZ

1. Whether There Is Sufficient Evidence to Support Alvarez's Conviction

■ Alvarez does not challenge the existence of a conspiracy involving his co-defendants. He only challenges the sufficiency of the evidence connecting him to the conspiracy. "In considering a challenge to the sufficiency of the evidence, we consider 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Bautista–Avila,* 6 F.3d 1360, 1362 (9th Cir.1993) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). When the evidence establishes that a conspiracy exists, there is sufficient evidence to support a conviction for knowing participation in that conspiracy if the government is able to establish, beyond a reasonable doubt, "even a slight connection" between the defendant and the conspiracy. *United States v. Wiseman,* 25 F.3d 862, 865 (9th Cir.1994) (citing *Bautista–Avila,* 6 F.3d at 1362); *see also United States v. Dunn,* 564 F.2d 348, 357 (9th Cir.1977). Finally, the uncorroborated testimony of co-conspirators is sufficient evidence to sustain a conviction unless "'incredible or unsubstantial on its face.'" *United States v. Yossunthorn,* 167 F.3d 1267, 1270 (9th Cir.1999) (quoting *United States v. Lopez,* 803 F.2d 969, 973 (9th Cir.1986)).

■ Viewing the evidence in the light most favorable to the government, we conclude that a rational trier of fact could have found that Alvarez knowingly participated in the conspiracy. Although the government offered no direct evidence of an agreement between Alvarez and other members of the conspiracy, three co-conspirators testified that Alvarez provided counter-surveillance during the transportation of loads of cocaine during 1996 and/or 1998. The testimony was somewhat inconsistent as to the nature and extent of

Alvarez's role,[1] but "any conflicts in the evidence are to be resolved in favor of the jury's verdict." *United States v. Alvarez–Valenzuela,* 231 F.3d 1198, 1201–02 (9th Cir.2000) (citation omitted). The jury was aware that the witnesses were cooperating with the government in exchange for lenient treatment, and the witnesses were subject to full cross-examination by the defense. Under these circumstances, we cannot disturb the jury's credibility determinations with respect to these witnesses. *See, e.g., Yossunthorn,* 167 F.3d at 1270 ("[T]he credibility of witnesses is a question for the jury unreviewable on appeal."); *United States v. Leung,* 35 F.3d 1402, 1405 (9th Cir.1994) ("[W]hen a jury is informed of the possible challenges to a witness'[s] credibility and nevertheless believes the witness, the reviewing court should not upset the jury's credibility determination.").

Because the witnesses' testimony regarding Alvarez's involvement was not incredible or unsubstantial on its face, it is sufficient to sustain his conviction. In addition, the testimony was corroborated by physical evidence that was seized from Alvarez's home and introduced at trial.[2] *See infra* Parts A.2–3. The evidence thus provided a sufficient basis for reasonable jurors to conclude that the government had established Alvarez's "slight connection" with the conspiracy beyond a reasonable doubt, and we reject Alvarez's challenge to the sufficiency of the evidence.

2. Whether the Seizure of Evidence from Alvarez's Home Violated His Fourth Amendment Rights

A warrant was issued to search Alvarez's residence on December 15, 1999. The supporting affidavit set forth the training and experience of the affiant, a special agent for the FBI specializing in narcotics investigations, described the background of the case, including the seizure of over five tons of cocaine from a Tucson warehouse and the fact that several search and arrest warrants were executed in May of 1999, and explained that the investigation and interviews with cooperating sources and cooperating defendants allowed the government to locate additional members of the conspiracy. The affidavit included the statements of two unnamed cooperating sources and two unnamed cooperating defendants who alleged that, among other things, Alvarez was involved in surveillance activities in connection with the transportation of loads of cocaine in 1996 and 1998, provided radios to surveillance drivers, and stored radios at his house. The affidavit further alleged that pen register and/or toll information for Alvarez's telephone number showed phone calls to and from other co-conspirators.

Based on this information, the magistrate judge concluded that there was probable cause that contraband would be found at Alvarez's home and issued a search warrant. Agents executing the warrant seized several hand-held radios, police scanners, and a transceiver device. The

---

**1.** For example, while all three witnesses implicated Alvarez in the conspiracy, only one of the three testified that Alvarez helped load cocaine on one occasion and that, in addition to providing counter-surveillance, Alvarez provided the conspirators with radio communications equipment that was stored at his home.

**2.** Radio communications equipment was seized from Alvarez's home on two separate occasions and was introduced at trial over defense objection. Although Alvarez offered the jury an innocent explanation for his possession of the radios—he ostensibly used the radios while hunting—the jury apparently credited the witness's testimony that Alvarez provided radio equipment to the conspirators for use in furtherance of the conspiracy. We cannot disturb this implicit finding. *See Yossunthorn,* 167 F.3d at 1270.

trial court denied Alvarez's motion to suppress this evidence.

Alvarez argues that the affidavit failed to establish probable cause because it did not include any information regarding the reliability of the confidential informants, failed to indicate that Alvarez was related to two of the co-conspirators to whom phone calls had been placed from his home, and failed to justify the magistrate's conclusion that a search of Alvarez's residence more than one year after his alleged surveillance activities would be fruitful. Thus, Alvarez asserts that the information contained in the affidavit was unreliable and too stale to establish probable cause that surveillance equipment would be found on the premises when the search warrant was executed in December of 1999.

■■■■■ In issuing a search warrant, a magistrate judge must look to the "totality of the circumstances" to determine whether the supporting affidavit establishes probable cause. *Illinois v. Gates,* 462 U.S. 213, 230, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In determining probable cause, the magistrate should consider an informant's veracity, reliability and basis of knowledge to resolve the "common-sense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place." *Id.* The totality of the circumstances approach "permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability)" surrounding informants' tips. *Id.* at 234, 103 S.Ct. 2317. Even if the reliability of a confidential source is not clearly established, the credibility of the statement is "enhanced" when the statement gives a detailed account of events that is corroborated by the statements of other confidential informants. *United States v. Hernandez–Escarsega,* 886 F.2d 1560, 1566 (9th Cir.1989) ("Although the reliability of several of [the] confidential sources was not clearly established, the detailed nature of many of their statements and the interlocking nature of their stories enhanced their credibility.").

■■■■■ The facts submitted to the magistrate must provide a substantial basis for the judge to conclude that the object of the search is probably on the premises to be searched at the time the warrant is issued. *Gates,* 462 U.S. at 239, 103 S.Ct. 2317; *Durham v. United States,* 403 F.2d 190, 193 (9th Cir.1968). "The most convincing proof that the property was in the possession of the person or upon the premises at some remote time in the past will not justify a present invasion of privacy." *Durham,* 403 F.2d at 193. Nevertheless, evidence of "the existence of a widespread, firmly entrenched, and ongoing narcotics operation" diminishes a defendant's staleness arguments. *Hernandez–Escarsega,* 886 F.2d at 1566 (upholding warrant based in part on information almost two years old regarding defendant's involvement in widespread narcotics conspiracy); *see also United States v. Dozier,* 844 F.2d 701, 707 (9th Cir.1988) ("The mere lapse of substantial amounts of time is not controlling" where "the ongoing nature of a crime . . . might lead to the maintenance of tools of the trade."); *United States v. Landis,* 726 F.2d 540, 542 (9th Cir.1984) ("The continuous nature of the activity diminishes the significance of the time lag between the acts described in the affidavit and presentation of the affidavit" to the court.).

■■■■■ Finally, a magistrate's determination of probable cause is afforded "great deference" by reviewing courts. *Gates,* 462 U.S. at 236, 103 S.Ct. 2317. Thus, the trial court's determination that an affidavit provided probable cause to issue a search warrant will be upheld unless clearly erroneous. *United States v. Bertrand,* 926 F.2d 838, 841 (9th Cir.1991).

If the court finds " 'that under the totality of the circumstances the magistrate had a substantial basis for concluding that probable cause existed,' " the warrant will be upheld. *Hernandez–Escarsega*, 886 F.2d at 1563 (quoting *United States v. McQuisten*, 795 F.2d 858, 861 (9th Cir.1986)).

 Applying these principles to the present case, we conclude that the magistrate had a "substantial basis" for his finding of probable cause. The search warrant affidavit included the statements of four separate confidential informants who implicated Alvarez in counter-surveillance activities in connection with the widespread cocaine conspiracy that spanned a period of almost five years. The fact that the confidential informants' information related to activity in 1996 and 1998 does not render the 1999 warrant stale because the case involved an extensive and longstanding drug conspiracy. Furthermore, the affidavit's inclusion of pen register data showed telephone contact between Alvarez's residence and other co-conspirators through May of 1999. Two of the informants stated that Alvarez provided the conspirators with radio equipment, one of whom added that the radios were stored at Alvarez's house. The overlapping nature of the informants' tips rendered them credible under circuit precedent and, in conjunction with the affiant's independent corroboration regarding Alvarez's communication with co-conspirators, provided a substantial basis for the magistrate's probable cause determination based on a totality of the circumstances analysis.[3]

### 3. Whether the District Court Erred in Admitting Seized Radios

As explained above, hand-held radios, police scanners, and a transceiver device seized from Alvarez's home were admitted into evidence over defense objection. Alvarez argues that the radios and other communications equipment were not relevant because the government failed to offer evidence that the radios seized from him were the same ones used by the conspirators when transporting cocaine, there was no evidence that the radios were functional, and there was no evidence that they were even compatible with each other or with the radios seized from other co-defendants.

The government responds that the presence of radios and related equipment at Alvarez's house, including the specific brand used in the conspiracy, was relevant. There was considerable trial testimony regarding the use of hand-held radios throughout the conspiracy. Thus, according to the government, the fact that Alvarez possessed such radios made it more likely that he was heard on the radio and had given them out as witnesses had testified. Finally, the government argues that the compatibility issue goes to the weight, not to the admissibility, of the evidence.

---

**3.** Even if the warrant were invalid for lack of probable cause, the evidence should not be suppressed if the executing officers relied on the warrant in good faith. *United States v. Leon*, 468 U.S. 897, 922–23, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). Alvarez has not put forth any persuasive arguments that the warrant was facially deficient, so the good faith exception would apply here even if the court were to find that the warrant lacked probable cause.

In addition, any error in issuing the warrant would likely be harmless beyond a rea-

sonable doubt. Radios were seized pursuant to an earlier search of Alvarez's residence and were introduced at trial. Alvarez does not challenge the earlier search in this action, and, as discussed *infra*, the trial court's admission of the radios was not an abuse of discretion. Therefore, any error resulting from the issuance of the second warrant would be harmless. *See United States v. Jennell*, 749 F.2d 1302, 1307 (9th Cir.1984) ("[T]he harmless error doctrine would preclude reversal even if admission of the [evidence] violated the Fourth Amendment.").

■ Trial judges have "wide discretion" in determining whether evidence is relevant. *United States v. Long*, 706 F.2d 1044, 1054 (9th Cir.1983). Evidentiary decisions are therefore reviewed for abuse of discretion. *United States v. Rohrer*, 708 F.2d 429, 432 (9th Cir.1983). In making this determination, reviewing courts consider whether the decision was based on relevant factors and whether there was "a clear error of judgment." *United States v. Soulard*, 730 F.2d 1292, 1296 (9th Cir. 1984). Reversal is required if it is "more probable than not" that the error affected the verdict. *Rohrer*, 708 F.2d at 432.

■ We agree with the government and find that the admission of the radios was not an abuse of discretion. The radios were relevant because they made "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. The fact that Alvarez possessed radios of the same brand used in the conspiracy certainly made the existence of material facts, i.e., whether Alvarez used them while conducting surveillance, distributed them to co-conspirators, and stored them, all in furtherance of the conspiracy, more probable than without the evidence. Because one witness's allegations that Alvarez provided radios and that Alvarez was heard over the radio during the transportation of cocaine were not corroborated by the other co-conspirator witnesses, the radios were relevant to the jury's determination of whether to believe the witness or not. Accordingly, the district court did not abuse its discretion in admitting the radios.

The fact that the government failed to show compatibility or specifically link the radios to the conspiracy means that the radios alone were insufficient to establish Alvarez's guilt of the crime of conspiracy beyond a reasonable doubt. *See United States v. Epperson*, 485 F.2d 514, 515 (9th Cir.1973) (holding that seized walkie talkies of the same make and tuned to the same channel as those used by conspirators were insufficient evidence, standing alone, to support conspiracy convictions without proof that the radios seized were actually used in the conspiracy). This does not mean, however, that the communications equipment was not relevant to the issue of Alvarez's connection to the conspiracy at issue here. Indeed, as explained above, the radios and other seized evidence were relevant to the disposition of this matter because they made the existence of material facts more likely. Because there was no abuse of discretion in admitting the radios and other communications equipment, Alvarez's challenge to the district court's denial of his motion to suppress must fail.

4. Whether the District Court Erred in Denying Alvarez's Motion to Sever His Trial From That of a More Culpable Co–Defendant

In March of 2000, Alvarez filed a motion to sever his trial from his co-defendants. In April, the government filed its Notice of Trial Groupings, placing Alvarez in Group 1 along with five other co-defendants, including his brother, David Alvarez. The trial court approved the groupings over defense objection and set trial dates on May 25, 2000. By the time of trial, however, two of Alvarez's co-defendants were fugitives, co-defendant/Appellant Valenzuela was moved to Group 2 due to illness, and one co-defendant had pled, leaving only Alvarez and his brother to stand trial together. The Alvarez brothers were charged with the same counts, except that David Alvarez was also charged with controlling a criminal enterprise. Alvarez did not renew the objection at trial.

■ The district court's denial of a motion to sever is reviewed for abuse of discretion. *United States v. Unruh,* 855 F.2d 1363, 1374 (9th Cir.1987). A defendant seeking reversal on this ground has the "burden of proving clear, manifest, or undue prejudice from a joint trial." *United States v. Joetzki,* 952 F.2d 1090, 1094 (9th Cir.1991). It is well settled that the motion to sever "must be renewed at the close of evidence or it is waived." *United States v. Restrepo,* 930 F.2d 705, 711 (9th Cir.1991) (citations omitted).

■ Alvarez's argument that the disparity in culpability between him and his co-defendant might warrant severance because of a potential "rub-off" effect has some weight. Only three of 29 trial witnesses implicated Alvarez in the conspiracy at all. The government introduced substantial physical evidence against David Alvarez, including guns and evidence of unexplained wealth. Finally, the court issued only one limiting instruction prior to deliberations. The issue, however, is waived because Alvarez failed to renew the motion at the close of the evidence.

■ In any event, Alvarez has not met his burden of establishing that he was prejudiced by the joint trial. The jury returned selective verdicts, convicting each defendant on one or more counts and acquitting or hanging on others. Therefore, the record shows that the jury followed the trial court's instructions to consider and decide the case separately for each defendant. The district court's denial of the motion to sever is affirmed.

**5.** Whether the District Court Erred in Denying a Discovery Request for Information in Co–Conspirator Witnesses' Probation Files

Alvarez filed a pretrial motion for disclosure, pursuant to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),[4] of the presentence reports (sometimes referred to as "PSRs") of the co-conspirator witnesses who were to testify against him at trial. The court granted the motion in part, limiting disclosure to redacted PSRs containing information related to the witnesses' acceptance of responsibility, substance abuse and mental health information, and prior criminal history and convictions. At a hearing on February 5, 2001, however, the government advised that PSRs had not yet been prepared for the co-conspirator witnesses.[5]

Alvarez then made an oral motion requesting disclosure of "whatever notes or records" the probation office had in its files regarding the witnesses' criminal history, relevant financial data, the government's recommendations, and the witnesses' statements describing the conspiracy. Without conducting an *in camera* review of the files, the trial court denied Alvarez's motion for the following reasons: (1) the documents were in the possession of the U.S. Probation office, not the prosecution; (2) disclosure of the raw data would be similar to rough notes of agents and "wouldn't be tied together, it would have very limited value"; (3) the probation office was busy and the defense could not cite authority that they were entitled to review probation files; and (4) the statements in probation files *"may or may not* be useful or constitute *Brady "*

---

**4.** *Brady* requires that the prosecution disclose evidence favorable to the accused and material either to guilt or punishment. 373 U.S. at 87, 83 S.Ct. 1194. Both impeachment and exculpatory evidence constitutes *Brady* mate-

rial that must be disclosed to the defense. *United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985).

**5.** The PSRs have since been prepared.

material. The district court stated that, in any event, anything exculpatory in the reports likely would become known by the government in the course of interviewing the witnesses and preparing for trial, and that the government would be obligated under *Brady* to disclose such information.

On appeal, Alvarez concedes that defense counsel was able to impeach the witnesses regarding the inconsistencies and discrepancies between their pre-trial statements to the government and their testimony at trial, but nevertheless argues that the witnesses' own statements regarding the offense and their conduct would have been material evidence directly related to their credibility. Thus, Alvarez claims entitlement to these statements and asserts that, at a minimum, he was entitled to an *in camera* review to determine whether the files contained *Brady* material.[6] The government counters that presentence reports generally are not public documents subject to prosecutorial control and that their disclosure is not mandated by *Brady*, the Jencks Act,[7] or Rule 16 of the Federal Rules of Criminal Procedure [8] when they are in the possession of the court or the probation department. The government also maintains that Alvarez has not pointed to anything in the record that reasonably indicates that the probation files contained discoverable materials

and that the district court's failure to conduct an *in camera* review is not error because Alvarez never raised it before the trial court. Because Alvarez failed to preserve this issue, the government argues it should be reviewed only for plain error.

We find that the issue of the necessity of an *in camera* review of the probation files was sufficiently raised at trial. We agree with Alvarez that a formal request for *in camera* review would have been futile after the district court ruled that "we are not going to go through 30 different rough notes or statements of individuals to see what might be personal, what might not be personal and what would be useful to the defense." Hr'g Tr. at 61–62 (Feb. 5, 2001). Thus, the issue was considered and rejected by the district court and is appropriately before this court on appeal.

While a criminal defendant has no constitutional right to examine presentence reports, he is nevertheless entitled to disclosure of *Brady* material contained therein. *E.g., United States v. Chavez–Vernaza,* 844 F.2d 1368, 1375 (9th Cir. 1987). Thus, "[a] defendant is entitled to material in a probation file that bears on the credibility of a significant witness in the case." *United States v. Strifler,* 851 F.2d 1197, 1201 (9th Cir.1988) (citing *Brady,* 373 U.S. at 87, 83 S.Ct. 1194). With respect to presentence reports, we have

---

6. Alvarez has requested this court, by motion, to conduct an *in camera* review of the probation files of the three cooperating witnesses. As discussed below, we believe the more appropriate disposition is to remand this issue to the district court.

7. The Jencks Act requires that, after a government witness has testified on direct examination, the government must give the defendant any statement, as defined by the Act, in the government's possession that was made by the witness relating to the subject matter to which the witness testified. 18 U.S.C. § 3500(b) (2000). A statement is (1) a written

statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness's oral statement, or (3) a statement by the witness before a grand jury. § 3500(e).

8. Rule 16 of the Federal Rules of Criminal Procedure governs discovery in criminal cases. It generally entitles a defendant to certain materials "within the government's possession, custody, or control," but expressly states that it does not authorize discovery or inspection of statements made by prospective government witnesses. Fed.R.Crim.P. 16(a).

stated that trial judges have discretion either to make an *in camera* inspection of the materials or to rely on an examination by a probation officer. *Chavez–Vernaza,* 844 F.2d at 1375. In *Strifler,* we stated that the appropriate procedure with respect to probation files is for the trial judge to conduct an *in camera* review to determine whether they contain discoverable information.[9] *Strifler,* 851 F.2d at 1201. "The trial court must release what it finds relevant, material and probative as to the witnesses[sic] credibility." *Id.* at 1202. Evidence affecting the credibility of government witnesses is material under *Brady, United States v. Shaffer,* 789 F.2d 682, 689 (9th Cir.1986), but the trial court need not release evidence that is "merely cumulative" of information already available to the defense, *Strifler,* 851 F.2d at 1202. Finally, because the trial court's decision not to conduct an *in camera* inspection of the probation files was a discovery ruling, it is reviewed for abuse of discretion. *United States v. Michaels,* 796 F.2d 1112, 1115 (9th Cir.1986).

In *Strifler,* the district court had released some information in the witness's probation files. 851 F.2d at 1201. Thus, the issue on appeal was whether the judge had released enough *Brady* material. *Id.* The *Strifler* court formally adopted the rule that "we will reverse [a conviction] for denial of *Brady* material from a probation file if, on review of the file, we find that the district court committed clear error in failing to release probative, relevant, material information." *Id.* at 1202. The court concluded that it was clearly erroneous for the trial court not to release a significant witness's entire criminal record, information related to the witness's motives for informing against the defendants, financial data, and other information that would have provided a basis for impeaching the witness. *Id.*

■ *Strifler* clearly established that Alvarez was entitled to an *in camera* review of the probation files of critical co-conspirator witnesses, and that the district court should have released all material therein that bore on the credibility of such significant witnesses. This is especially true where, as here, the judge ordered production of the witnesses' redacted PSRs but, as the government had delayed the sentencing of the cooperating witnesses, the PSRs had not yet been prepared. *Strifler,* however, did not determine the appropriate remedy when a trial court fails to follow the established procedure and to conduct an *in camera* review of the probation files in the first instance.

**9.** The government attempts unsuccessfully to diminish *Strifler's* holding. But the cases it cites relate to a defendant's entitlement to *inspect* presentence reports in seeking *Brady* material from the government—a request routinely denied by the courts because PSRs are prepared by probation officers for the court's use in sentencing and are not public documents subject to prosecutorial control—or are otherwise distinguishable. *See, e.g., United States v. Anzalone,* 886 F.2d 229, 232–33 (9th Cir.1989) (concluding that the trial court did not abuse its discretion in denying defendant's request to disclose, or examine *in camera,* the presentence report of a government witness, where, among other things, another judge examined the report, the motion was untimely, and other government witnesses corroborated the witness's testimony, making it doubtful that he was a "significant" witness under *Strifler* ); *United States v. Zavala,* 839 F.2d 523, 528 (9th Cir.1988) (holding without analysis that the government is not required to disclose probation reports under *Brady,* Jencks, or Rule 16 of the Federal Rules of Criminal Procedure if the reports are in the possession of the court or the probation office); *United States v. Walker,* 491 F.2d 236, 238 (9th Cir.1974) (finding, in response to defendant's request for discovery of a witness's probation report which could contain statements inconsistent with his trial testimony, that the trial judge may personally inspect the records for exculpatory material or may rely upon an examination by the probation officer).

In this situation, it is impossible for us to determine whether the trial court abused its discretion by failing to release information in the files, because the files are not part of the appellate record.

The Supreme Court of the United States addressed an analogous situation in *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987). In *Ritchie*, the Court ruled that a defendant charged with child abuse was entitled to have a state child protective services file reviewed by the trial court to determine whether the file contained information that probably would have changed the outcome of his trial. *Id.* at 58, 107 S.Ct. 989. The Court remanded and instructed the trial court that the defendant must be given a new trial if the file contained such information. *Id.* If, however, the file contained no such information, or if the nondisclosure was harmless beyond a reasonable doubt, then the lower court was to reinstate defendant's vacated conviction. *Id.*

This court has followed a similar procedure with respect to the government's possible *Brady* violations. In *United States v. Bernal–Obeso*, 989 F.2d 331 (9th Cir.1993), the court stated that "[b]ecause neither we nor the trial court know what it is we are attempting to review ... [t]he appropriate step is to vacate the defendant's conviction and remand to the district court for an evidentiary hearing" to determine whether the government had discharged its obligation to provide the defense with material exculpatory evidence, including impeachment evidence, within its possession regarding a confidential informant/witness. *Id.* at 335–36; *cf. United States v. Kiser*, 716 F.2d 1268, 1273–74 (9th Cir.1983) (vacating conviction and remanding for *ex parte, in camera* hearing on defendant's entitlement to a *Franks* hearing); *United*

*States v. Davis*, 663 F.2d 824, 830–31 (9th Cir.1981) (same). We indicated that the procedure "should most closely approximate the manner in which the decision regarding admissibility should have been made in the first place." *Bernal–Obeso*, 989 F.2d at 337.

■ Based upon the foregoing principles, we hold that where a district court fails to conduct an *in camera* review of the probation files of significant witnesses pursuant to a timely defense request for *Brady* materials, we will vacate the defendant's conviction and remand the case to the district court with instructions to conduct the review. As in *Bernal–Obeso*, "[o]ur intent in ordering [an *in camera* review of the files] is to restore the parties to the position in which they found themselves pretrial." *Id.* at 336. If the trial court determines that the probation files contain probative, relevant, and material information [10] bearing on the credibility of significant witnesses that could have affected the outcome of the trial, *Strifler*, 851 F.2d at 1202, the district court shall release the appropriate information to the defense and order a new trial. If, however, the district court determines that a new trial is not warranted, the court shall reinstate the judgment of conviction. The panel retains appellate jurisdiction over the matter in the event either party is aggrieved by the trial court's ruling. *See Bernal–Obeso*, 989 F.2d at 337.

### 6. Whether the District Court Abused Its Discretion in Other Rulings

The district court ordered the government to provide *Brady* material fourteen days prior to trial and Jencks material seven days prior. Less then two weeks before trial, the defense sought a continu-

---

**10.** If Alvarez is aware of specific information contained in the file, he is free to request it directly from the court and to argue in favor of its materiality. *See Ritchie*, 480 U.S. at 60, 107 S.Ct. 989.

ance due to the government's alleged late filing of large amounts of disclosure and the alleged failure to provide certain *Brady* material; at that time, the district court refused to order disclosure of *Brady* material and denied the continuance motion. The government turned over notes or reports of debriefings of the co-conspirator witnesses on the first day of trial, relying on the Jencks Act as justification for the late disclosures. At trial, defense counsel objected to Mario Escarcega's testimony implicating Alvarez because it was markedly different from a report disclosed to the defense that was ostensibly generated from Escarcega's pre-trial interviews.[11] While it overruled the objection, the court did grant Alvarez additional time to prepare for cross-examination in light of this new testimony. Finally, during the course of trial, the court ruled that rough notes taken by government agents during interviews of prospective witnesses would not constitute Jencks material unless they were adopted by the interviewees, but the court stated that the notes "could be discoverable" under Jencks if and when the agent who interviewed the witness testified.

Alvarez makes several arguments related to these discovery issues. He asserts that prior statements of the witnesses who testified against him, along with government agents' notes of discussions with the witnesses prior to trial, constitute *Brady* and Jencks Act material that should have been disclosed to the defense. Alvarez claims that he had a right to disclosure of *Brady* material sufficiently in advance of trial to be useful to the defense and that it was error not to order early disclosure of the reports of the witnesses' statements

because *Brady* trumps Jencks. Alvarez also argues the trial court erred under *Brady* and Jencks in failing to conduct an *in camera* inspection of the government's reports and notes for potential discovery violations. Finally, Alvarez claims error in the district court's denial of his request for a continuance as a result of the government's alleged discovery violations. Alvarez summarily concludes that his "Fifth Amendment right to due process and the Sixth Amendment right to confront witnesses against him were violated," and that his conviction should be reversed.

We review discovery questions, including alleged *Brady* and Jencks Act rulings, for abuse of discretion. *Michaels,* 796 F.2d at 1115–17 (holding that the district court did not abuse its discretion in failing to order production of agents' rough notes under *Brady* and Jencks). To prevail on appeal, Alvarez must show not only that the district court abused its discretion, but also that the abuse resulted in prejudice to his "substantial rights." *Id.* at 1115. The district court's ruling on a motion to continue is also reviewed for abuse of discretion. *United States v. Hoyos,* 573 F.2d 1111, 1114 (9th Cir.1978). Finally, the harmless error rule applies. If Alvarez does not establish that production of agents' notes, or timely production of other discovery, would have been likely to affect the outcome of the trial, any error is harmless. *United States v. Boshell,* 952 F.2d 1101, 1105 (9th Cir.1991).

Alvarez's claim that the court should have conducted an *in camera* review of the notes to determine whether they were discoverable must fail. The Jencks Act provides for *in camera* inspec-

---

11. Escarcega testified that he observed Alvarez conduct counter-surveillance outside the home of another co-defendant in 1996, while Escarcega waited in a loaded vehicle on or near the premises. Escarcega's testimony re-

garding this incident was a surprise to the defense, as the only debriefing report disclosed by the government did not implicate Alvarez in any manner.

tion "[i]f the United States claims that any statement ordered to be produced ... contains matter which does not relate to the subject matter of the testimony of the witness." 18 U.S.C. § 3500(c). The Act does not authorize the district court to troll for evidence favorable to. the defendant. Similarly, the district court need not conduct an *in camera* review of the government's files for *Brady* evidence favorable to the accused. *Michaels,* 796 F.2d at 1116. Furthermore, in a case like this, in which the defendant requests specific evidence under *Brady,* he must show that it is material. The test for materiality is whether the requested evidence might affect the outcome of the trial. *United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); *Michaels,* 796 F.2d at 1116. Alvarez fails to make such a showing because he was able to impeach Escarcega with the timing of his implication of Alvarez in the conspiracy. On cross-examination, Escarcega admitted that he had never mentioned Alvarez in any of his pre-trial interviews with the government. Escarcega also admitted changing his story approximately one week before he testified after learning that Alvarez was on trial. The jury was fully aware of the discrepancies between Escarcega's pre-trial and trial statements regarding Alvarez's involvement in the conspiracy, and therefore the government's production of the agents' interview notes would not have affected the outcome of the trial.

■ Alvarez's challenge to the allegedly tardy *Brady* disclosures must also fail. "When the defense seeks evidence which qualifies as both Jencks Act and Brady material, the Jencks Act standards control." *United States v. Jones,* 612 F.2d 453, 455 (9th Cir.1979). Moreover, because Alvarez makes no attempt to show that the government agents' notes satisfy either of the two requirements that would render them witnesses' statements under the Jencks Act, *see supra* note 7 (defining

"statement" under the Act) and *Boshell,* 952 F.2d at 1105, he has not shown that the district court abused its discretion in refusing to order production of the notes, *see Michaels,* 796 F.2d at 1116.

Because the district court did not err in its discovery rulings, its denial of the defense request for a continuance on the grounds of government discovery violations was not an abuse of discretion.

7. Whether Alvarez's Sentence Violates *Apprendi* Because There Was No Jury Determination of Drug Quantity

■ Alvarez was charged with, and convicted of, conspiracy to possess with intent to distribute more than five kilograms of cocaine, and the statutory penalty for this offense is ten years to life. 21 U.S.C. §§ 841(b)(1)(A), 846. The jury made no explicit finding regarding the weight of the drugs, though in convicting Alvarez of the offense charged it necessarily found that more than five kilos were involved. In Alvarez's presentence report, the probation officer determined the weight attributable to Alvarez was one ton, a calculation based on testimony that linked Alvarez to loads delivered to the home of a co-conspirator. Alvarez objected to the calculation of drug quantity in the PSR, but the trial court accepted the PSR calculation and found the base offense level for one ton of drugs to be level 38. After adjusting the offense level for Alvarez's minor participation in the conspiracy, the court found the sentencing guideline level applicable to Alvarez was 36. With Alvarez's criminal history category of I, his conviction carried a sentencing range of 188–235 months (approximately 15 years to 19 years). Because there had been no jury determination of quantity, the maximum sentence to which Alvarez was exposed was 20 years under 21 U.S.C.

§ 841(b)(1)(C). There is no statutory minimum sentence. Applying the guidelines pursuant to U.S.S.G. § 5G1.1, the court sentenced Alvarez to 188 months, the minimum sentence in the range for his offense level. This sentence is below the statutory maximum for the offense.

Alvarez claims that the district court's determination of quantity increased the statutory maximum penalty to which Alvarez was exposed in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). This argument is wholly without merit. *Apprendi* held that other than a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *Id.* at 490, 120 S.Ct. 2348. *Apprendi* also stated that " '[i]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed.' " *Id.* (quoting *Jones v. United States,* 526 U.S. 227, 252–53, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (Stevens, J., concurring)). But here the trial court's determination of quantity did not increase the penalty to which Alvarez was exposed beyond the prescribed statutory maximum. As discussed, the statutory maximum for conspiracy to possess with intent to distribute more than five kilograms of cocaine is life. Without a jury determination of quantity, the maximum is 240 months (20 years) under § 841(b)(1)(C). Alvarez was sentenced to the minimum sentence allowed under the sentencing guidelines for his offense level of 36, 188 months, which falls below the statutory maximum authorized by the jury's verdict. Defendant is not entitled to relief under *Apprendi. See, e.g., United States v. Buckland,* 289 F.3d 558, 562 (9th Cir.) (en banc) (rejecting facial challenge to 21 U.S.C. § 841, which does not specify who shall determine drug quantity or identify the appropriate burden of proof), *cert. denied,* 535 U.S. 1105, 122 S.Ct. 2314, 152 L.Ed.2d 1067 (2002); *United States v. Romero,* 282 F.3d 683, 690 (9th Cir.) (rejecting *Apprendi* challenge to district judge's determination of drug quantity because the resulting sentence did not exceed the maximum sentence authorized by the jury's verdict), *cert. denied,* 537 U.S. 858, 123 S.Ct. 228, 154 L.Ed.2d 96 (2002); *United States v. Saya,* 247 F.3d 929, 942 (9th Cir.) (as amended) ("We have held repeatedly that a defendant cannot obtain relief under *Apprendi* when his sentence does not exceed the statutory maximum authorized by the jury's verdict, even if the district court determined the drug amount by a preponderance of the evidence, instead of having the jury determine the amount beyond a reasonable doubt."), *cert. denied,* 534 U.S. 1009, 122 S.Ct. 493, 151 L.Ed.2d 404 (2001).

8. Whether There Is Sufficient Evidence to Support the District Court's Calculation of Drug Quantity

The district court's determination of drug quantity is a factual issue reviewed for clear error. *United States v. Fox,* 189 F.3d 1115, 1118 (9th Cir.1999). The government must prove quantity by a preponderance of the evidence, *United States v. August,* 86 F.3d 151, 154 (9th Cir.1996), and, once persuaded to that level of proof, the court approximates the quantity of the controlled substances involved under U.S.S.G. § 2D1.1. The information supporting the approximation must possess sufficient indicia of reliability to support its probable accuracy, and the district court must "err on the side of caution." *August,* 86 F.3d at 154 ("[S]ince a defendant's sentence depends in large part upon the amount of drugs attributable to his conduct, and approximation is by definition imprecise, the district court must

err on the side of caution in choosing between two equally plausible estimates.").

■ Here, the PSR described in detail the scope of the conspiracy, which involved at least 12 tons of cocaine. Trial testimony from the three cooperating witnesses specifically linked Alvarez to at least three loads of cocaine in 1996, each load consisting of approximately one ton.[12] Based on this testimony, the PSR calculated the quantity attributable to Alvarez as one ton. The district court accepted this calculation as reasonable and based Alvarez's base offense level on that amount. Alvarez argues that the testimony regarding weight was speculative because none of the loads were actually weighed. The testimony of co-conspirators given under oath and subject to cross-examination, however, has sufficient indicia of reliability to support the calculation's probable accuracy. *See United States v. Vought*, 69 F.3d 1498, 1502–03 (9th Cir.1995) (finding that witness testimony supported trial court's calculation of drug quantity). Moreover, the court erred on the side of caution when attributing only one ton to Alvarez when the testimony linked him, at a minimum, to three tons. We conclude that the district court did not clearly err in calculating drug quantity.

Even if the court had committed error, any error would be harmless beyond a reasonable doubt. In order to lower Alvarez's base offense level and the corresponding sentencing range, the quantity of cocaine attributed to him would have to drop below 150 kilograms, or approximately 330 pounds. The record does not support such a drastic reduction, and therefore re-calculation of the quantity would not lead to a lesser base offense level. The error, if any, is harmless. *See United*

States v. Scheele, 231 F.3d 492, 499–500 & n. 4 (9th Cir.2000).

B. VALENZUELA

A jury found that Richard Valenzuela's garage/workshop was used by the conspiracy to store cocaine in 1996. Because of his involvement, Valenzuela, like Alvarez, was convicted of a single count of conspiracy to possess with intent to distribute cocaine in excess of five kilograms. A jury interrogatory specifically indicated that the amount of cocaine he conspired to possess was 12,000 pounds. Valenzuela does not challenge the sufficiency of the evidence to support his conviction. Rather, he challenges the district court's jury selection procedures and a jury instruction given prior to deliberations, claims that prior consistent statements of informant-witnesses were improperly admitted to bolster the witnesses' in-court testimony, claims error in the district court's refusal to order the government to grant use immunity to a defense witness, and challenges the relevancy of admitted evidence as to co-conspirators' other crimes in other places in other years to the charge against him. Each of these issues are addressed below.

1. Whether the District Court Erroneously Instructed the Jury that a Person Can Conspire to Possess Cocaine Without Having Known that Cocaine was the Object of the Conspiracy

■ Valenzuela objects to the following language in jury instruction No. 12: "IT DOES NOT MATTER WHETHER THE DEFENDANT KNEW THAT THE SUBSTANCE WAS COCAINE. IT IS SUFFICIENT THAT THE DEFENDANT KNEW THAT IT WAS SOME KIND OF

---

**12.** Trial testimony also linked Alvarez to at least one load in 1998, but the PSR did not take this testimony into account.

A PROHIBITED DRUG." Valenzuela concedes that this language is appropriate to a possession trial, citing *United States v. Carranza*, 289 F.3d 634, 644 (9th Cir.), cert. denied, 537 U.S. 1037, 123 S.Ct. 572, 154 L.Ed.2d 458 (2002), but argues that a conspiracy conviction requires that Valenzuela knew that the specific object of the conspiracy was to possess cocaine and not just that he conspired to possess some illegal drug.

We need not reach the issue because the error, if any, is harmless. *See Neder v. United States*, 527 U.S. 1, 13, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). Valenzuela does not dispute that the government proved the existence of a conspiracy to possess cocaine, and the evidence at trial more than established his "slight connection" to it. Therefore, the evidence is sufficient to sustain Valenzuela's conviction for knowing participation in the conspiracy. *See supra* Part III.A.1. Furthermore, the jury specifically found, beyond a reasonable doubt, that the quantity of cocaine Valenzuela conspired to possess with intent to distribute was 12,000 pounds. The jury's verdict demonstrates that it indeed found that Valenzuela conspired to possess cocaine and not some other prohibited drug. Given the evidence at trial that Valenzuela was recruited to store cocaine in furtherance of the conspiracy, that cocaine was delivered to his home in dump trucks for storage, and that Valenzuela was paid for storing cocaine, the jury would have convicted Valenzuela even if it had been instructed that Valenzuela must have known that the object of the conspiracy was cocaine. Therefore, any error in the disputed jury instruction was harmless.

2. Whether the District Court Erred in Admitting a Cooperating Informant's Prior Consistent Statements

Valenzuela complains that a government agent witness improperly described being led to various houses in 1996 by informant Steven Knipp following Knipp's arrest on cocaine-related charges, that Knipp himself described for the jury his previous identification of Valenzuela's house in 1996, and that the government's closing argument improperly used Knipp's 1996 "statements" to investigating agents to bolster his 2001 trial testimony. Valenzuela argues that the descriptions of Knipp's actions in 1996 were inadmissible prior consistent "statements" under Federal Rule of Evidence 801(d)(1)(B), because the statements were made after Knipp's alleged motive to fabricate arose. *See Tome v. United States*, 513 U.S. 150, 167, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995). Thus, Valenzuela asserts, the court's error in admitting these "statements" warrants reversal of his conviction. The government counters that no prior consistent statements of Knipp were admitted at trial and that any possible error was harmless.

▪ Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). A "statement" can be an oral or written assertion, or a person's nonverbal conduct, if it is intended by the person to be an assertion. *Id.* subsection (a). Whether the district court correctly construed a hearsay rule is a question of law reviewed *de novo*. *United States v. Olafson*, 213 F.3d 435, 441 (9th Cir.2000). A decision to admit evidence as non-hearsay, however, is reviewed for abuse of discretion. *See id.* Finally, we may consider the district court's error in admitting hearsay harmless "unless we have grave doubt whether the erroneously admitted evidence substantially affected the verdict." *United States v. Ellis*, 147 F.3d 1131, 1134 (9th Cir.1998) (internal quotation marks and citation omitted).

■ We find that the trial court did not abuse its discretion in finding that the statements describing people's actions in 1996 did not constitute inadmissible hearsay. Based upon our review of the trial transcript, government counsel and the court painstakingly attempted to guard against hearsay during the trial. Witnesses were frequently reminded not to testify as to what was said, but were asked to simply describe what they did during the initial meetings with informant Knipp. For example, a federal agent explained how Knipp took him and his supervisor to three houses in December of 1996, explained that one of the residences they went to belonged to Valenzuela, and identified pictures of Valenzuela's residence that were taken at that time. The court did not abuse its discretion in ruling that none of this constituted hearsay.[13]

■ Even if the in-court statements regarding the witnesses' actions in 1996 constituted hearsay because they described Knipp's act—intended by Knipp as an assertion about where he delivered drugs—of leading agents to "stash" houses, the error was harmless. As the district court explained,

[I]f Knipp is going to be a witness, and I assume one of the things they are going to ask is, after you were arrested, did you go out with the agents and point out the houses. He is allowed to testify about that. That is not an impermissible statement along the lines you objected to, so it is going to come out anyway in that form. . . . I don't see any prejudice at this point in light of what I see likely to unfold in this.

Tr. at 138 (Sept. 20, 2001). Knipp did indeed testify about taking the agents to various "stash" houses in 1996 without defense objection. Knipp also testified, without objection, that he had taken agents to Valenzuela's residence in 1996 because he had delivered cocaine there on multiple occasions. Thus, even if the district court erred in allowing the argument and testimony regarding Knipp's informant role in 1996, the error was harmless. Given the abundance of testimony regarding Valenzuela's role in the conspiracy, we conclude that any erroneously admitted hearsay did not substantially affect the verdict.

3. Whether the District Court May Disqualify Jurors Based on Questionnaire Answers with No Opportunity for the Defense to Observe, Rehabilitate, or Clarify

■ The district court had potential jurors complete questionnaires prior to voir dire in open court. In the absence of the jury, the court and the parties dismissed jurors for cause based on their questionnaire answers. The court overruled Valenzuela's objections to the lack of opportunity to observe or to rehabilitate the jurors or to clarify their ambiguous answers at this time. The remaining potential jurors were subsequently brought into court, so that the parties could exercise peremptory challenges. Valenzuela argues that the district court's dismissal of jurors for cause, without affording the opportunity for observation or rehabilitation, violated Federal Rule of Criminal Procedure 24(a) and 43(a). He relies upon a recent decision of the United States Court of Appeals for the Fourth Circuit, *United States v. Rolle*, 204 F.3d 133 (4th Cir.2000), which noted that "an accused's absence during the jury selection process can potentially frustrate the fairness of a trial by denying the defendant an opportunity to

---

13. The agent did testify that Knipp had pointed at a residence where he had purchased *personal-use amounts of cocaine*, which may constitute inadmissible hearsay because the agent described Knipp's nonverbal conduct that was intended as an assertion. That testimony, however, did not relate to Valenzuela's home.

'give advice or suggestions to his lawyer concerning potential jurors.'" *Id.* at 136 (quoting *United States v. Camacho,* 955 F.2d 950, 953 (4th Cir.1992)).

Even if the district court's actions constituted error, it was harmless error. Valenzuela has not alleged that the jurors who convicted him were biased or unfair, let alone assert that the conduct of the voir dire resulted in a jury panel that reached a verdict different from that which would have been reached otherwise. *See Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 101 L.Ed.2d 80 (1988) (affirming conviction where, although the trial court erred in failing to dismiss a juror for cause, the error did not deprive petitioner of an impartial jury). Because any error was harmless, Valenzuela's challenge to the trial court's jury selection procedures is rejected.

4. Whether the District Court Erred in Refusing to Compel the Government to Grant Immunity to a Defense Witness

The issue of a defense request for immunity is a mixed question of law and fact and is reviewed *de novo. See United States v. Young,* 86 F.3d 944, 947 (9th Cir.1996). The district court's findings of fact in relation to this issue are reviewed for clear error. *See id.* A criminal defendant is not entitled to compel the government to grant immunity to a witness unless (1) the testimony is relevant and (2) "the government distorted the judicial fact-finding process by denying immunity." *Id.* The use of immunized testimony for the prosecution, while denying immunity to a defense witness who would directly contradict that of the government witness(es), distorts the fact-finding process. *Id.* at 948 (discussing *United States v. Westerdahl,* 945 F.2d 1083, 1087 (9th Cir. 1991)).

Valenzuela asked the district court to compel the government to grant use immunity to a potential witness, Leanne Clutter. Although Ms. Clutter's testimony met the first aspect of the test (relevancy), the district court found that nothing in her proposed testimony would have *directly* contradicted that of the immunized government witnesses. Therefore, the district court refused to compel the government to grant immunity to Ms. Clutter.

We find that the district court did not err in finding that immunization was not mandatory under controlling case law. Although Ms. Clutter had been to several "stash" house locations and would have testified that Valenzuela's home was not one of those she visited, this does not directly contradict the testimony of the government's witnesses that Valenzuela's house was in fact used to store cocaine in 1996. In fact, Ms. Clutter was not present during any of the shipments of cocaine to various "stash" houses, so she was not in a position to directly contradict the government's witnesses' testimony that implicated Valenzuela in the scheme. Therefore, we affirm the district court's denial of the defense's motion to compel the government to grant use immunity to Clutter.

5. Whether the District Court Erred in Admitting Evidence of Tons of Cocaine Delivered by Other Conspirators to Other Cities During Other Years

We review a district court's ruling on the relevance of evidence for abuse of discretion. *United States v. Bensimon,* 172 F.3d 1121, 1129, 1130 (9th Cir. 1999) (finding that the district court did not abuse its discretion in finding evidence relevant to the crime charged). Valenzuela claims that the district court's admission of evidence relating to events that hap-

pened in 1998 and 1999, and events that happened in California and Phoenix, were irrelevant and highly prejudicial to his defense. The government points out that Valenzuela may have failed to preserve his objections to some of this evidence below and, as such, the rulings should be reviewed only for plain error.

Given the district court's broad discretion to determine the relevancy of evidence, its admission of evidence related to the conspiracy is upheld. Valenzuela was charged with, and found guilty of, involvement in a conspiracy that lasted from 1995 until 1999. Thus, there was no abuse of discretion in admitting relevant evidence that proved the conspiracy existed during 1998 and 1999.

### IV. CONCLUSION

For the foregoing reasons, Francisco Javier Alvarez's conviction is VACATED and his case REMANDED for an *in camera* inspection of the probation files of the three co-conspirator witnesses as they existed at the time of Alvarez's initial discovery request. If the district court determines that the files contained relevant, material, and probative information relating to the credibility of those witnesses, or other *Brady* or Jencks material that was not disclosed to the defense and that could have affected the outcome of the trial, then the district court must direct the probation office to release the materials and order a new trial. Appellant Valenzuela's conviction and sentence are AFFIRMED.

Case No. 01–10686 is VACATED AND REMANDED.

Case No. 02–10260 is AFFIRMED.