**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Prudencio URIARTE–ACOSTA,**
**Defendant–Appellant.**

**No. 08–10163.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 10, 2008.

Filed Dec. 22, 2008.

Gregory A. Brower, Esquire, U.S. Attorneys Office, Peter Stuart Levitt, Esquire, USLV, Office of the U.S. Attorney, Las Vegas, NV, for Plaintiff–Appellee.

Arthur L. Allen, Henderson, NV, for Defendant–Appellant.

Before: B. FLETCHER, McKEOWN, and GORSUCH,* Circuit Judges.

## MEMORANDUM **

Prudencio Uriarte–Acosta appeals his convictions for possession of methamphetamine with intent to distribute, 21 U.S.C. § 841(a)(1), and conspiracy to distribute methamphetamine, 21 U.S.C. § 846. Mr. Uriarte–Acosta contends that: (1) there was insufficient evidence to support his convictions, and (2) the court improperly allowed a law enforcement witness to testify that Mr. Uriarte–Acosta had an image on his cell phone of a man known as the "patron saint of narcotics traffickers." We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

1. In considering a challenge to the sufficiency of the evidence, we consider whether, after "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Moses,* 496 F.3d 984, 987 (9th Cir.2007). Mr. Uriarte–Acosta argues that, even when viewed through this lens, the evidence is insufficient to show that he did anything other than innocently accompany Adrian Michel–Figueroa to a casino where Mr. Michel–Figueroa happened to deliver

---

* The Honorable Neil M. Gorsuch, United States Circuit Judge for the Tenth Circuit, sitting by designation.

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

drugs to an undercover officer. He cites for support *United States v. Lopez,* 625 F.2d 889 (9th Cir.1980), where we found the evidence insufficient to convict a defendant who was simply a passenger in a car with drug dealers at the scene of a drug transaction without any apparent knowledge of or involvement in the transaction. After carefully reviewing the record in this case, we conclude that there is ample evidence to distinguish this case from *Lopez* and support Mr. Uriarte–Acosta's convictions.

■ a. Witnesses testified that after Mr. Uriarte–Acosta dropped off Mr. Michel–Figueroa in the front of the casino to meet the undercover officer, Mr. Uriarte–Acosta drove slowly around the parking lot without parking even though he passed several unoccupied spaces. A federal DEA agent testified that this behavior suggested he was conducting counter-surveillance. This court has previously held that evidence a defendant conducted counter-surveillance while an associate delivered drugs is sufficient to support a drug conspiracy charge, even without direct evidence that the defendant agreed with co-conspirators to accomplish an illegal objective. *United States v. Alvarez,* 358 F.3d 1194, 1201 (9th Cir.2004).

b. After officers approached Mr. Michel–Figueroa, Mr. Uriarte–Acosta drove quickly out of the parking lot. A reasonable jury could conclude that his attempted flight suggested he knew that he and Mr. Michel Figueroa were involved in illegal activities. *United States v. Harris,* 792 F.2d 866, 869 (9th Cir.1986) (flight can show consciousness of guilt and guilt itself).

c. Mr. Uriarte–Acosta drove the car containing drugs to the transaction site, and we have previously acknowledged it to be unlikely that drug dealers "would ... have allowed an outsider to drive a car loaded with [drugs]." *United States v. Mesa–Farias,* 53 F.3d 258, 260 (9th Cir. 1995). Further, Mr. Michel–Figueroa delivered the drugs to the undercover officer in a Coca–Cola carton. The evidence does not suggest there was any attempt to hide the carton from Mr. Uriarte–Acosta. Though Mr. Uriarte–Acosta contends he did not know what was inside the carton, a jury could conclude that there was no attempt to hide the carton because each one of the co-conspirators, including Mr. Uriarte–Acosta, knew what was inside.

d. Investigators compiled phone records from phones seized from Mr. Uriarte–Acosta, Mr. Michel–Figueroa, and Esteban Cortez–Savalza, another individual present in the car driven by Mr. Uriarte–Acosta. The records showed frequent communication between the phones in the days leading up to the February 3, 2005 drug transaction. In addition, phone records showed that when Mr. Michel–Figueroa sold drugs to an undercover officer one week earlier, the men, including Mr. Uriarte–Acosta, made several calls to each other immediately after the undercover officer requested more drugs than Mr. Michel–Figueroa had to supply. Shortly after the calls, Mr. Michel–Figueroa met Mr. Cortez–Savalza at a residence for a short meeting after which Mr. Michel–Figueroa returned to the casino and sold the requested additional drugs to the officer. A rational jury could fairly infer from these facts that Mr. Michel–Figueroa was a street-level dealer who depended on Mr. Cortez–Savalza and Mr. Uriarte–Acosta for his supply.

e. The car and cell phones seized from Mr. Uriarte–Acosta were not registered in his name. When viewed in light of the other evidence, a jury could rationally conclude from these facts that Mr. Uriarte–Acosta was attempting to conceal illegal behavior.

2. Separately, Mr. Uriarte–Acosta argues the district court erred by allowing a government witness to testify that one of the phones seized from Mr. Uriarte–Acosta displayed an image of Jesus Malverde, someone the government witness testified is regarded as the unofficial "patron saint of narcotics traffickers." Because Mr. Uriarte–Acosta did not object to the admission of this evidence at trial, we review only for plain error. *United States v. Olano,* 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). For Mr. Uriarte–Acosta to succeed under this standard, he must establish (1) an error, (2) that is plain, (3) that affects his substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Id.* at 732–36, 113 S.Ct. 1770.

Even assuming (but not granting) that Mr. Uriarte–Acosta could succeed in establishing the first two of these elements, he cannot show that the error affected his substantial rights. We are confident that, even if the evidence relating to the image on Mr. Uriarte–Acosta's cell phone had not been introduced, the outcome of his trial would have been the same. First, in his testimony relating to Jesus Malverde, the government's agent, Chris Cadogan, made clear that many people who have "nothing to do with drug trafficking" honor Jesus Malverde, undercutting any suggestion that the image on the cell phone compelled the conclusion that Mr. Uriarte–Acosta was involved in drug trafficking. Second, the government in its closing rebuttal argument markedly downplayed the significance of the cell phone image, telling the jury that the image of Malverde was "the least influential circumstance that you should rely upon in this case." Finally, and perhaps most importantly, the govern-

ment introduced substantial independent evidence, summarized above, demonstrating that Mr. Uriarte–Acosta was a knowing participant in the drug transaction.

**AFFIRMED.**